In the Matter of the Final Judicial Settlement of the Account of Proceedings of WILLIAM L. VISSCHER, as Executor, etc., of THOMAS H. HAM, Deceased.

FRED C. HAM and Another, Appellants; WILLIAM L. VISSCHER and Others, Respondents.

Third Department, July 1, 1925.

Wills — equitable conversion — executor was directed to sell real estate — sale became unnecessary when devise to charitable institutions was cut down by force of statute (Decedent Estate Law, § 17) — testator died intestate as to real property — direction in will did not amount to equitable conversion — amount realized from sale passes to heirs at law — taxes, commissions and expenses borne by residuary estate.

Equitable conversion of real property of the testator does not result from a provision in a will directing the executor to sell real property, and the money received from the sale thereof will be construed as real property and will pass to the heirs at law, where it appears that the sale of the property became

unnecessary to carry out the provisions of the will when a devise to charitable institutions was cut down by force of section 17 of the Decedent Estate Law, and that as to the real property in question the testator died intestate.

Under the provisions of the will, taxes, commissions and expenses must be borne by the residuary estate.

APPEAL by Fred C. Ham and another from certain parts of an amended final decree of the Surrogate's Court of the county of Albany, entered in the office of said Surrogate's Court on the 7th day of January, 1925.

The testator, Thomas H. Ham, executed his will November 3, 1914. He was at that time unmarried. After making numerous bequests in his said will he continued therein as follows:

" *Eighteenth.* I direct my executor to convert all the rest, residue and remainder of my estate real and personal into cash, granting him or his successor full power and authority to sell at public or private sale any real estate or personal property I may die seized of, not hereinbefore devised, and after paying said legacies that do not lapse or become null and void and said transfer tax, commissions and expenses, to divide the same into four equal parts or shares, and to pay over and distribute one of such parts or shares to each of the following corporations respectively, viz: " (specifying four corporations).

On November 11, 1918, the testator having married executed a codicil to his said will. The codicil made no change in the said eighteenth paragraph of the will except that it gave the entire residuary estate to the American Bible Society and the American Tract Society. The deceased died November 11, 1922, and said will and codicil have been admitted to probate. His only heir-at-law is a brother, the appellant Fred C. Ham. It is undisputed that more than one-half of the estate after the payment of debts was given to benevolent, charitable or religious associations in contravention of the statute (Decedent Estate Law, § 17).* and that the amount bequeathed to them is valid to the extent of one-half of the estate and no more. This is because of the marriage of the testator intermediate the execution of his will and the execution of the codicil thereto. When the original will was executed all of the bequests were valid to the full extent thereof. There is a stipulation in the record as follows: " The net estate, after deducting the debts and uncollectible assets, amounted to $202,757.44; and the one-half thereof permitted by law to be disposed of to religious and other corporations amounted to $101,378.72. The real estate of the testator, exclusive of a cemetery lot, consisted of premises known as 443 State Street, in the City of Albany, N. Y., assessed

---

* Since amd. by Laws of 1923, chap. 301.— [REP.

at $13,000 and sold by the executor April 1, 1923, for $18,000." It appears that after payment of all lawful legacies and all expenses of administration and other expenses there remains for distribution $21,214.33 as the proceeds of the personal property exclusive of the $18,000 received from the proceeds of the real estate. As to these latter amounts the testator, because of the partial illegality of his residuary bequests, died intestate.

*Newton B. Van Derzee*, for the appellant Fred C. Ham.

*Frederick S. Harris* [*James J. Farren* and *Samuel H. King* of counsel], for the appellant, respondent, May Winne Ham.

*Rosendale, Dugan & Haines* [*P. C. Dugan* of counsel], for the respondent American Bible Society.

*W. H. Van Steenbergh* [*P. C. Dugan* of counsel], for the respondent American Tract Society.

*Whalen, Murphy, McNamee & Creble* [*Sherman A. Murphy* of counsel], for the respondent William L. Visscher, as executor, etc.

COCHRANE, P. J.:

The principal controversy herein exists between the testator's widow, May Winne Ham, and his brother and heir-at-law, Fred C. Ham, and relates solely to the proceeds of the real estate. The former contends that under the residuary clause of the will there was a conversion of the realty into personalty and that she is, therefore, entitled to one-half of the proceeds of the realty. The latter contends that the personal estate being more than sufficient to pay all expenses of administration and all valid bequests there was no necessity for the conversion of the real property and that the same descended to him upon the death of the testator and that the proceeds thereof unnecessarily sold belong to him. The surrogate has sustained the former contention. (123 Misc. 889.)

There is in the residuary clause a positive direction to the executor to convert the real estate into cash and there is no doubt about the general rule as contended in behalf of Mrs. Ham and as held by the surrogate that such positive direction indicates an intent on the part of the testator that such conversion shall be made and that the law will consider the conversion as actually made at the death of the testator and treat the real estate as personalty for all purposes intended by the will. But it seems to be equally clear that this rule is qualified when the purpose of the conversion fails because of illegality and that such conversion will only be recognized to such extent as may be necessary to carry out the lawful objects of the will.

One of the leading cases on this subject is *Gourley* v. *Campbell* (66 N. Y. 169), where it is said: " The rule in equity is well settled that when a conversion of real into personal estate is ordered for particular purposes, and those purposes fail, the land retains its original character and descends to the heirs. In *Chitty* v. *Parker* (2 Ves. Jr. 271) the testatrix directed her real estate to be sold and all her estate to be converted into money for the purposes of her will. The will was satisfied without touching her real estate, and it was held that there was no equity for the next of kin against the heir, and that the heir takes all that which is not for a defined and specific purpose given by the will."

In *Chamberlain* v. *Taylor* (105 N. Y. 185) we read in the opinion as follows: " The case shows that the real estate of the testator embraced but a small portion of his property, and that the personal estate was much more than sufficient to satisfy all of the valid legacies. * * * It is, however, urged that the authority given the executors to sell and convey the real estate for the purposes of the will worked an equitable conversion, and so changed its character as to take it out of the operation of the rules provided by statute, for the descent of real estate. As we have seen, under the construction given to this will, there was no necessity in satisfying its purposes, that there should be a conversion, and equity will never presume a conversion unless it is demanded to accomplish the lawful purposes expressed in the will by the testator." And in speaking of the case of *Chamberlain* v. *Chamberlain* (43 N. Y. 424), where the same will was under consideration, the court continued: " It was held that in so far as the testator attempted by the residuary clause to give to the institutions therein named, more than one-half of his residuary estate, his effort was ineffectual, and that such portion of his estate as was not well disposed of by will, descended to the testator's heirs-at-law and next of kin."

In *Jones* v. *Kelly* (170 N. Y. 401) the court after stating the general rule as claimed by Mrs. Ham continued as follows: " But this claim assumes, necessarily, that the will, by valid provisions, commanded that all of the estate be converted into personalty, the land of which the testator died intestate as well as the other. That he intended to have it all turned into cash there can be no doubt, but so too did he intend to give it all when so converted to the two charitable institutions, and the conversion was directed for that purpose; but his plan offended in part against the law of the State, and as to such part the legal result is the same as if he had not made any attempt to dispose of that part of his estate, for as to that he died intestate. His primary purpose was to divide the bulk of his estate between two charitable corporations,

and his direction to sell the real estate and pay the proceeds over to such corporations in equal proportions was merely an incident to a proper division of the estate, a method selected by him for making those devises effectual. And in so far as his intention to dispose of his estate failed for want of power, it would seem to be a necessary and logical result that the character of the estate undisposed of would be unaffected by his futile attempt at its disposition. * * * In the *Giraud* case [*Giraud* v. *Giraud*, 58 How. Pr. 175], the court said, ' the positive direction to sell amounted to an equitable conversion of the real estate into personalty, but it is to be borne in mind that such conversion was for the valid objects of the will and when the object fails, the conversion — to that extent — also fails.' ''

In behalf of Mrs. Ham numerous cases are cited none of which involves the question of a failure of a testamentary disposition of property except the case of *Kearney* v. *Missionary Society* (10 Abb. N. C. 274). That was a Special Term case but when the opinion is analyzed it is an authority in favor of the heir. The estate consisted principally of realty. There was a direction to convert the same and hold the proceeds in trust for the benefit of certain beneficiaries and after their death the same was to go to certain religious societies in excess of the amount permitted by the statute. It was held that conversion was necessary in order to carry out the valid trust provisions of the will and that after such lawful purposes the realty having been converted into personalty did not after the termination of the trust estate resume the character of realty. The court said: " The primary purposes of the conversion were completely valid, and the fact that the ultimate beneficiaries after the death of the husband of the testatrix — the religious societies — cannot take all the ' proceeds,' which was intended to be given to them, does not restore, to the part which they cannot take, the quality of realty. That part still remains personalty, and is to be distributed as such. *The rule is different where there is a failure of the direct object or purpose of the conversion* (*Betts* v. *Betts*, 4 Abb. N. C. 317, 419, and cases cited)." (Italics ours.)

It is further suggested that the language in the residuary clause " after paying said legacies that do not lapse or become null and void and said transfer tax, commissions and expenses, to divide," etc., indicates a purpose on the part of the testator to commingle the proceeds of his realty and personalty and to thus constitute a common fund out of which all legacies and other disbursements shall be indiscriminately paid. It is argued that the power of sale was not alone for the residuary legatees but in pursuance of a

general scheme to constitute a common fund for the payment not only of the residuary legacies but the general legacies as well and the incidental expenses of administration. The argument is not without force but if it were otherwise unanswerable we find its refutation in the codicil. The testator there made a bequest to his wife in lieu of dower and directed that it should be a *first* charge on his *personal* estate. He also made provisions for possible children and again directed that the same should be a *first* charge on his *personal* estate. This clearly indicates his intention that general legacies should be paid out of his personal estate. If they were to be paid from the real as well as the personal estate there was no point in directing that some of them should be first paid from the personal estate. The testator doubtless expected (which expectation was abundantly realized by the result) that his personal estate would more than suffice for the payment of general legacies and that there would be a surplus of his personalty to be added to the proceeds of his realty and which would go to his residuary legatees and it was to carry out that expectation that he directed payment to such residuary legatees of the proceeds of his real estate and such surplus of his personalty as should remain " after paying said legacies that do not lapse or become null and void and said transfer tax, commissions and expenses." The proposed conversion of the realty had reference only to the residuary legatees and not to the general provisions of the will and being, therefore, unnecessary for any lawful purpose of the will such conversion was ineffectual. The entire situation seems to be disposed of by the following quotation from *Read* v. *Williams* (125 N. Y. 560): " The personal estate was largely in excess of the sum required to pay charges and legacies outside of what was given by the residuary clause. The direction to sell the real estate apparently could have had no purpose except to accomplish an easy division of the residuary estate among the corporations to which it was to be given. The gift failing, the purpose of the conversion ceased, and the direction to sell the real estate was no longer imperative. The conversion was not directed for the purpose of distribution of the estate as money among the next of kin. The testatrix never intended that they should take it in any form. The case falls within the general principle declared in many cases, that a power of sale in a will, however peremptory in form, if it can be seen that it was inserted in aid of a particular purpose of the testator, or to accomplish his general scheme of distribution, does not operate as a conversion where the scheme or purpose fails by reason of illegality, lapse or other cause. In that case the property retains its original character, and it goes to the heir or next of kin

as real estate or personalty, as the case may be.   Nothing short of a clear intention, to be collected from the will, that the land shall be sold and converted into money before division, whether the particular purpose fail or not, will be sufficient in equity to change the character of the property."

The appeal of Mrs. Ham relates to the refusal of the surrogate to charge taxes, commissions and expenses to the shares of the residuary legatees, the American Bible Society and the American Tract Society.   We think the surrogate did not err in that respect.

The decree should be modified so as to provide that the proceeds of the real estate be paid to the heir-at-law, and as so modified affirmed, with costs to all parties filing briefs herein payable out of the personalty.

All concur.

Decree modified so as to provide that the proceeds of the real estate be paid to the heir-at-law, and as so modified unanimously affirmed, with costs to all parties filing briefs herein payable out of the personalty.