In the Matter of the Estate of HENRY L. BUCK, Deceased.*

Surrogate's Court, New York County, November 22, 1935.

* See *Matter of Buck*, 158 Misc. 114; *Matter of Voelker*, Id. 97; *Matter of Kaufman*, Id. 102.

*Davies, Auerbach & Cornell* [*Sydney G. Soons* and *Harrison F. Durand* of counsel], for the executor.

*Robert Williamson*, for the widow.

*John C. West*, for The Christian and Missionary Alliance.

DELEHANTY, S. On this executor's accounting the parties interested in the problem agree upon a computation which discloses that to the extent of $8,432.93 the gifts to charity under the will of deceased exceed the limit permissible under section 17 of the Decedent Estate Law. The problem presented is whether that sum is presently payable to the widow, who is sole distributee of deceased. She asserts her right to immediate payment.

No detailed comment need be made by the court upon the application to the facts in this estate of the amendment of section 17 of the Decedent Estate Law made with intent to change the rule in *Matter of Seymour* (239 N. Y. 259) theretofore in effect. It suffices to say that all the factors entering into the computation as stated in the memorandum of the executor are properly evaluated and the court accepts the method there stated as the correct method of computation of the interest of the charities. In this county that method has been established by the decisions in *Matter of Apple* (141 Misc. 380); *Matter of Schalkenbach* (155 id. 332), and *Matter of Lord* (Id. 628). A different method of computation seems to have been adopted elsewhere (*Matter of Miranda*, 151 Misc. 459; and *quære Matter of Sonderling*, 155 id. 403; and *Matter of Coughlin*, 149 id. 672). Note is made of this apparent difference of viewpoint merely to emphasize the holding in this court that the method adopted by the executor in valuing charitable gifts is the correct one.

The assertion by the widow that she has the right to immediate payment of the excess is without foundation. Under this will a valid trust of the entire residue in the estate was created. The excess is part of that residue and so it must remain within the trust and cannot be paid over until the trust terminates. (*Matter*

*of Franklin Trust Co.,* 190 App. Div. 575; *Matter of Apple, supra; Matter of Sonderling, supra.*) The trust will terminate at the death of the widow because the renunciation by the sister of deceased nullifies the gift to her *ab initio* and removes her as one of the limiting lives. While not payable now to the widow the fund is her property as distributee in the sense that she may alien it subject to the operation of the trust and she may dispose of it by her will.

Section 17 of the Decedent Estate Law, which became effective on September 1, 1930, says, in respect of gifts to charity which are postponed: " no allowance may be made for such postponement or for any interest or *gains* which may accrue after the testator's death." Does this mean gains at any time during the life of the trust or gains during the period of administration? It is possible to construe it as applicable throughout the life of this trust but the court deems such construction to be erroneous. Its true meaning is that during administration and prior to payment of a legacy to or for the account of a charity the gains during administration are excluded. The charitable gift is computed on the basis of the gross value of the estate, less debts, ascertained *as of the date of decedent's death.* Here the payment by the executor to itself as trustee is payment of the legacy. Thenceforth the administration of the fund will proceed with the usual incidents of expenses, losses and gains which are common to the administration of any trust fund.

Included in the fund turned over by the executor to the trustee is $8,432.93, which is property payable to the widow or her estate at the end of her life. This sum together with all the rest of the fund, constitutes the fund out of which the annuity for the widow is to be paid. The whole fund, less only this sum of $8,432.93, represents the portion of the entire trust corpus which at the end of the widow's life is to go to the charities.

Accordingly in the proper administration of the trust fund the trustee should earmark to the extent of $8,432.93 the capital in the trust and keep such fund (subject to losses or gains which may accrue during a proper administration of it) available for distribution as the intestate property payable at the death of the widow; or (if the trust corpus is dealt with *in solido*) should establish the percentage which such sum of $8,432.93 bears to the total trust capital set up, and at the end of the administration of the trust should pay over that percentage of the then existing trust corpus to the distributee's estate.

In other words, the limitation of the quoted portion of section 17 of the Decedent Estate Law which forbids recognition of gains after

the testator's death does not apply to the fund after it is set up in trust even if it may accrue some gains during the period of the trust. Such increment follows the normal course and belongs in due proportion to those to whom the original principal is due. Any losses during the trust administration must likewise be shared in the same proportions.

Submit, on notice, decree construing the will and settling the account accordingly.