In the Matter of the Estate of WILLIAM B. KAUFMAN, Deceased.*

Surrogate's Court, New York County, January 24, 1936.

* See *Matter of Buck*, 158 Misc. 111; Id. 114; *Matter of Voelker*, Id. 97.

*Milbank, Tweed, Hope & Webb,* for the trustee, petitioner.

*Adolph & Henry Bloch* [*Adolph Bloch, Joseph Rosenzweig* and *Benjamin L. Blauvelt* of counsel], for the widow and next of kin.

*Emil Goldmark* [*Robert D. Steefel* of counsel], for the Federation for the Support of Jewish Philanthropic Societies of New York City.

DELEHANTY, S. The widow and next of kin of deceased assert in this accounting proceeding that the will of deceased violates section 17 of the Decedent Estate Law. Deceased died August 21, 1922. His will divides his residuary estate into three equal parts and creates a trust therefrom respectively for his widow, for a brother and for a sister. Deceased's brother died June 22, 1924, one year and ten months after deceased. Deceased's sister died October 24, 1934, twelve years and two months after deceased. The widow of deceased is still living. The will creates a secondary trust for those who survive the first to die of his three beneficiaries. The capital of the trust of the one dying first is added in equal shares to the capital of the trusts for the survivors. On the death of deceased's sister distributions of capital are directed and that fact makes necessary a construction of deceased's will.

The one-third of the entire residuary estate which must now be distributed is payable to the Federation for the Support of Jewish Philanthropic Societies of New York City, unless the gift contravenes the statute. Upon the death of the widow of deceased the remaining two-thirds of the entire residuary is payable to the same charity, if the gift is valid. A stipulation has been filed which gives the data necessary for determination of the question now presented.

At the death of deceased his gross estate, less debts, amounted to $1,959,983.80. One-half of that sum is $979,991.90, the amount which gifts to charity may not validly exceed. After payment of the expenses of administration, the funeral expenses, the debts of deceased and the legacies, other than the legacies in trust, there was turned over to the trustee a sum of $1,345,891.68 representing the original net residuary estate as of the date of deceased's death. The trustee received also a sum of about $47,000 earned during the administration of the estate.

The cross directions for secondary trusts were intended to cover every contingency of survivorship among the beneficiaries of the primary trusts. The happening of any contingency automatically excluded the possibility of the happening of certain other contingencies. The actually effective life estates have been ascertained now and are referred to herein as such. The value of such actually effective life estates has been stipulated on the basis that the assumed expectancies under the American Experience Tables of Mortality are used and also on the basis of use of the actual duration of the lives of the sister and brother. Such values are stipulated at interest rates of five per cent, four per cent and three per cent respectively. At the highest rate the value of $732,118.04 is reached if the tables are used and a value of $631,087 is reached if the actual duration of

the expired lives is used. The lowest value computed is based on a three per cent rate and on the actual duration of the expired lives plus the expectancy under the tables of the continuing life. This minimum value is $423,600.

The residuary which went into the trust had a value of $1,345,891.88, exclusive of the increase during administration. If from this amount is deducted the maximum value assigned to the effective life estates it is plain that as of deceased's death the computed value of the gift to charity would be only $613,773.84. Even if the lowest computed value for the effective life estates is used the value of the gift to charity as of deceased's death is ascertained to be only $922,291.88. Since the permissible maximum gift to charity is $979,991.90 it is apparent that on every one of these computations the value of the gift to charity is not in excess of that permitted by the statute. Counsel for the distributees of deceased present computations based upon *present values* of the trust funds and arrive at various results which they denominate as " Excess," that is, intestate property. It is not possible to adopt these computations because the trust funds are reported at figures which do not match the actual values as of date of death. The correct method of computation is that asserted in behalf of the charity.

Counsel for the distributees approaches the problem by suggesting an unusual application of some phases of the rule declared by the Court of Appeals in *Matter of Seymour* (239 N. Y. 259). Since this testator died in 1922 and since the text of section 17 of the Decedent Estate Law then was the same as when the issue in *Matter of Seymour* arose counsel deal with that rule in a manner which is in part a use of it but in part an attack on it. They attack it from many angles. They say that it never had any justification in the statute. They say that the statute always meant something quite different from what the court in that case and in many other cases held it to mean. They say that the rule for valuing life estates applied in that case was merely a rule of evidence not applicable here because, as to the measuring lives; we are dealing here with actuality and not with presumption and because, as to rate, we are dealing with a period of trust administration during which actual interest rates have not equalled the rate used in *Matter of Seymour*. They assert that the amendment to the section made in 1929 was a legislative declaration that the courts had misconstrued the section and was a legislative interpretation of the pre-existing text of the statute which the courts are now bound to accept though such acceptance would involve reversal of their previously declared interpretation. They assert that the interests

of the charity are to be measured now by using as a yardstick one-half of the value of the gross estate as of the date of death and by applying this yardstick to the actual fund available at the date of distribution. It is readily perceived how broadly and fundamentally counsel attack the heretofore accepted method of determining the validity of charitable gifts. Basically, counsels' major position is that the courts misinterpreted the original text of section 17 of the Decedent Estate Law and that in 1929 the Legislature undertook to set the courts right as to the original meaning of the original text.

It is not necessary to inquire whether the fiat of a particular Legislature will be accepted by the courts as defining the meaning of a statute which the courts undertook to ascertain from the original text. Upon a mere statement of the thesis it is apparent how broad a claim is made for legislative authority in the assertion that a subsequent Legislature may by its own enactment undertake to say what a former Legislature meant in its use of a particular set of words. The meaning of statutes has always been regarded as a topic within the jurisdiction of the courts. The subject of legislative power need not be explored because the court is definitely of opinion that the Legislature of 1929 had no such thought in mind as is attributed to it by counsel for the distributees. It might be noted at this point that the legislation was enacted in 1929 but by its terms did not become effective until September 1, 1930. That postponement of effective date should suffice to negative the whole argument that the Legislature was interpreting the statute for the past as well as making a rule for the future. If it was indulging in an attempted interpretation of past enactments it surely would not have deferred the time of taking effect of the amendment.

The amendment of 1929 was part of a program of revision presented to the Legislature by the Commission to Investigate Defects in the Law of Estates. To the act as it was presented to the legislators there was appended a note of the Commission. The whole tenor of that note and of the amendment of 1929 must be looked at to ascertain what the Commission and the Legislature respectively had in mind by presenting and enacting the amendment.

The amendment first limited the right to challenge a gift to those persons whose interests are affected. That part of the amendment is not of consequence here. The remainder of the amendment can be understood properly only if the background against which it was enacted is understood. In *Matter of Seymour*, the Court of Appeals apparently accepted the idea stated in *Matter of Brooklyn Trust Co.* (179 App. Div. 262) that in the case of an excess gift the statute transformed a residuary gift uncertain in amount

" into a general legacy for a fixed sum." Starting with this basic idea the court then said that to the sum so ascertained there would attach an interest credit (which in the *Seymour* case was figured at five per cent compounded annually) until the time arrived when under the terms of the will the legacy became payable. There was much criticism of the rule but at least it furnished a formula upon which courts and lawyers thereafter relied. In actual operation the rule frequently resulted in the absorption by the charitable gift of the interests which otherwise might have been payable to distributees. In a case where the intervening life estate exceeded the expectancy established by the tables a tentative partial intestacy might be wholly wiped out by this accrual of compound interest and the distributees might get nothing. In establishing the rule which transformed an actual legacy actually payable in the future into a theoretical legacy for a lesser sum theoretically payable at once there had to be supplied a compensating factor of allowance for " postponement." It should be clearly understood that this " allowance for postponement " was the allowance for the theoretical postponement of a theoretical legacy presently payable. Unless it is understood that the rule dealt with pure theory and not with actual fact there is immediate danger of misconception of the legislative enactment and the legislative intention.

It was a necessary corollary that in the working of the *Seymour* rule gains during administration were excluded. It is logically impossible to reconcile the idea of a general legacy upon which interest is running with the idea that the legatee has any interest in gains during administration. If the legatee gets his principal with interest it does not matter to him whether there are gains or losses, provided the losses do not affect his rights. Since the distributees are at the hazard that the tentatively intestate property may be exhausted by the accrual of interest on this purely theoretical general legacy they are, of course, entitled to the benefit of gains during administration. When the Commission proposed the act of 1929 it was plainly seeking to substitute reality for theory once more and to bring the subject-matter of the validity of a charitable gift back to the real terms of the will and to the actual conditions of the legacy itself. It was seeking to prevent thenceforward any such theoretical transformation of an actual remainder interest into a presently payable general legacy. In substituting actuality for theory the Commission sought to make simple and understandable the plan of valuation thenceforth to be used.

Having the background against which the legislation was drafted by the Commission and having the benefit of the Commission's note it becomes entirely clear that the amendment of 1929 operated

to supersede the *Seymour* rule and to substitute for it a simple computation of the value of the gift to charity made as of the death of the testator. When the computation is made as of date of death there is involved no " interest or gains which may accrue after the testator's death." Since the *Seymour* rule is inapplicable there need be no allowance for postponement because no theoretical advancement of date of payment would have been made and so no compensating allowance for postponement is necessary. The whole matter is brought back to the application of simple mathematical rules to known factors. There is no theoretical general legacy. There is no theoretical postponement. If, for instance, the gift is of a remainder interest in an entire residuary and if the burdens upon the residuary by reason of intervening life estates make the worth in money of the whole remainder gift to charity less than half of the total estate (minus debts) then the gift of the remainder interest in the whole residuary is wholly valid. To repeat, the valuation as of date of death involves no allowance for postponement because there is none. The valuation as of date of death involves no interest or gains which may accrue after the testator's death because on the date as of which the computation is made (*i. e.*, death) there could be no gains. The phrasing of the amendment is wholly understandable and wholly clear when the background of the *Seymour* rule is taken into account. In effect the Legislature has said to the courts: " Don't speculate on theoretical legacies, don't talk about consequent theoretical postponement, don't discuss gains; just find the money worth at death of the actual gift as it is written in the will. Use standard arithmetical formulae to ascertain that worth. If that worth does not surpass the limit fixed herein the gift is wholly valid; if it does exceed the limit, the excess may not go to charity." The 1929 Legislature indulged in no legerdemain. It attempted no economic miracles. It did not say that a dollar payable in the future equals a dollar payable at once. It did not say that less than a half is a half. The original text of section 17 of the Decedent Estate Law was left undisturbed. The 1929 additions barred further use of particular methods of computation only. The statute still deals with the money value of the thing actually given. It still says that if the aggregate of everything given to charity does not, at the time of death, exceed in money value one-half of the gross estate at the time of death (less debts) the " devise or bequest shall be valid."

While the basic position of counsel for the distributees is that the original text of section 17 of the Decedent Estate Law has been misinterpreted by the cases and hence that the earlier cases should be disregarded, yet it should be noticed that they present arguments

which are based upon some aspects of the rule in *Matter of Seymour*. It should be noted that the *Seymour* rule is itself an effective rule (antecedent September 1, 1930) only in those cases where the gift to charities *exceeds* one-half the gross estate less debts. It is only in that situation that there is need to consider a transformation of the gift as stated in the will into a theoretical general legacy for a fixed sum, with all the attendant consequences which flow from that transformation.

The 1929 amendment has been discussed because of the insistence of counsel for the distributees that its text governs rights under this will even though the testator died in 1922. The court holds that the rules of law declared in the cases antecedent the amendment furnish the correct basis for decision in this proceeding. The fund now available for distribution is, of course, less than the amount payable to charity. The court is asked to apportion this sum nevertheless because of the theory advanced by the distributees that in the long run and when the eventual distribution is made of the remaining two-thirds of the fund the actual payments to charity will exceed the permissible limit. Having found, however, that there is no invalidity in the gift to charity and that the whole residuary gift is valid there is no warrant for apportionment and the fund now available is payable wholly to the charity. It is repetitive but it may still be serviceable to say that the ascertainment of validity or invalidity is made as of the date of death. The operations in the estate thereafter cannot affect that basic determination. The gift here is of the whole remainder residuary interest inclusive of gains whether during the executor's management or that of the trustees. Hence the whole residuary, no matter when payable and no matter of what value when payable, is payable to the charity. This is so since as of decedent's death the value of the gift to charity did not exceed the statutory limit. Here the present apparent increase exceeds $270,000. Whether it be more or less at final distribution it is payable to the charity.

Since counsel for the distributees insist that in *Matter of Seymour* the propriety of the use of the mortality tables was not in fact passed upon and since they insist that this court should deal with the ascertained duration of the intervening lives it is pertinent to point out that the matter of the use of the mortality tables as the sole basis of valuing life estates seems not to be open to question in this State since the decision in *Matter of Bullard* (253 N. Y. 562). While the court below (225 App. Div. 734) expressly left the question open, the surrogate (130 Misc. 337) reached his determination on the basis that the tables must be used rather than the then ascertained actual duration of lives. An affirmance without opinion

by the Court of Appeals is of course limited to a determination that the result reached below was correct in the opinion of the court of last resort. However, in its affirmance the Court of Appeals cited *Hollis* v. *Drew Theological Seminary* (95 N. Y. 166) in which (p. 179) express direction was made that the tables be used. The court cited as well *Matter of Durand* (194 N. Y. 477) where the court (p. 488) expressly said that the tables must be used rather than the actual durations of lives. The court cited, too, *Ithaca Trust Co.* v. *United States* (279 U. S. 151) where HOLMES, J., said: " The question is whether the amount of the diminution, that is, the length of the postponement, is to be determined by the event as it turned out, of the widow's death within six months, or by mortality tables showing the probabilities as they stood on the day when the testator died. The first impression is that it is absurd to resort to statistical probabilities when you know the fact. But this is due to inaccurate thinking. The estate so far as may be is settled as of the date of the testator's death.  *  *  *  Tempting as it is to correct uncertain probabilities by the now certain fact, we are of opinion that it cannot be done, but that the value of the wife's life interest must be estimated by the mortality tables." The citation of these authorities as the express basis for affirmance seems to warrant the belief that the Court of Appeals has definitely adopted the rule that the tables must be used in every case. That conclusion seems necessary particularly because of the citation of HOLMES, J. His views had no applicability to the problem in *Matter of Bullard* except in respect of the use of the tables. The underlying facts in that case are precisely in point here. There, as in *Matter of Bullard*, the expectancy of the intervening life was larger than the actual duration of it as ascertained when the litigation began. Nevertheless, the tables were made the sole standard. All authorities to the contrary which may be found in the cases in this jurisdiction must be deemed superseded by *Matter of Bullard* (*supra*), and the mortality tables must be held in every case to be the sole standard.

" It is not against public policy to allow gifts to charitable, benevolent, scientific or educational institutions. The law allows and encourages such gifts, and those who make them are commended as the benefactors of their race. Such institutions dotted all over the land, to succor, elevate, educate men and ameliorate their condition, are distinguishing features of our modern civilization." (*Hollis* v. *Drew*, 95 N. Y. 166, 172.) In a decade which has witnessed an unparalleled expenditure of private and public funds for objects which are commonly called charitable there is no room for reluctance in confirming the validity of charitable gifts.

Neither is there warrant for an attitude of harsh limitation of such gifts. On the contrary, every public and private reason exists for preserving in the maximum degree the right of testators to make such gifts and of the recipients to take them in the full measure intended for them. No narrow interpretation of section 17 of the Decedent Estate Law, such as would in fact defeat a testator's charitable purposes, should be sought. On the contrary, that interpretation should be adopted which alone is consonant with the testator's real purpose unless express and unmistakable declarations of public policy to the contrary forbid. Here the statute wholly supports the gift whether the statute be looked at in its original text effective in 1922 or in its text effective September 1, 1930.

Submit, on notice, decree construing the will and settling the account accordingly.