In the Matter of the Estate of VICTORIA MORRIS, Deceased.*

Surrogate's Court, New York County, October 8, 1940.

*Gould & Wilkie*, for the executors.

*George Gray Zabriskie*, for the Seamen's Church Institute of New York.

DELEHANTY, S. Deceased made a general bequest to one charitable corporation and a residuary bequest to another. There is no expression in the will of preference for either legatee. The aggregate value of these legacies exceeded the statutory maximum defined in section 17 of Decedent Estate Law. Appropriate action

---

* Affd., 261 App. Div. 950.

to restrict the charities to the statutory limit was taken by a distributee. The question now here for decision is whether the common-law principle of abatement regulates the shares of the general and residuary charitable legatees in the total fund now held for them by the executors. If the common-law rule prevails the general legatee will be paid in full. What then remains of the statutory maximum will go to the residuary legatee.

The residuary legatee points out that the Court of Appeals in *Matter of Seymour* (239 N. Y. 259, 263) said that " By virtue of the statute a residuary gift to the (charitable) corporation uncertain in amount is transformed into a general legacy for a fixed sum. (*Matter of Brooklyn Trust Company*, 179 App. Div. 262, 264.) " In the *Brooklyn Trust Company* case the court said: " If the gifts to the institutions (residuary legatees) are to be treated as general legacies for the purpose of casting the expenses of the administration on the next of kin, they must also be so treated for every purpose." From these premises the residuary legatee here reaches the conclusion that for present purposes the court should hold it to be a general legatee for an amount fixed on the theory that the distributee had not exercised his rights under section 17. This sum having been found it should next be regarded (the residuary legatee argues) as constituting the numerator of a fraction having as its denominator the same sum plus the amount of the true general legacy and this fraction finally should be applied to the maximum fund actually available for charity to ascertain the precise share of the residuary legatee in that fund.

In *Matter of Kaufman* (158 Misc. 102) it was pointed out that on the recommendation of the Commission to Investigate Defects in the Law of Estates the Legislature in 1929 amended section 17 of the Decedent Estate Law to overcome one of the consequences arising from literal adherence to the transformation principle stated in the *Seymour* and *Brooklyn Trust Company* cases (*supra*). To treat as a general legacy what the testator deemed a residuary legacy is to indulge in a fiction — and fictions should be sparingly employed and then only when they are indispensable means to achieve a clearly just result. The expansion of any new legal concept, valid enough for the purpose for which it was originally formulated, into regions already governed by established contrary principles unsettles the law and should, therefore, be avoided.

The cases on the present question are not in agreement. *Matter of Sonderling* (155 Misc. 403, 407) and possibly *Matter of Gardner* (151 id. 342) support the views of the residuary legatee. That the common-law principle of abatement should operate is held to be the rule in *Matter of Johnson* (76 Misc. 391, 393, 394); *Matter of*

*Crane* (12 App. Div. 271, 277; affd., 159 N. Y. 557), and *Matter of Ham* (123 Misc. 889; affd., 213 App. Div. 487; affd., 242 N. Y. 536). The records on appeal in the *Ham* case show that the present question was not raised on the briefs either in the Appellate Division or in the Court of Appeals. The situation is different in the *Crane* case (*supra*). There deceased gave general legacies to named charities while the residue was bequeathed to the city of New York. The main question was whether the city was to be deemed a charitable corporation within the meaning of the statute from which present section 17 of Decedent Estate Law is derived. The city was held not to be such a charity. Going beyond this ruling, however, the Appellate Division said: " Even if the city were one of the defined (charitable) corporations * * * it would still take a part of the residue, for it appears that the estate is of the value of about $70,000. The total amount of the general legacies (to charities) is but $20,000. That would still leave some $15,000 to go to the city without passing beyond the one-half of the estate which the testator was authorized by the act to give to the specified institutions." It is evident from this text that the court was employing the common-law principle of abatement as against the idea that where a limit has been placed on charitable gifts by the action of the statute all legacies to charity, both general and residuary, must abate *pro tanto.* The correctness of the common-law principle for this situation was argued in the *Crane* case before both the Appellate Division and the Court of Appeals by two charities which were general legatees. One of them said in its brief in the Appellate Division: " it was claimed on the argument of the case before the Surrogate on behalf of the city that in case it were decided that the testatrix had disposed of more than half of her estate in violation of the statute * * * that all the legacies should abate *pro tanto.*" The general legatees, therefore, formally undertook to resist such subsidiary result should the city's main position be lost on the appeal. Thus the quoted dictum of the Appellate Division respecting the correct rule for a case such as is now before this court was uttered only after that court had been formally invited to rule on the point.

Why should not the common-law principle of abatement be applied where shrinkage in the total of gifts to charity is caused by operation of this statute? The common-law rule that a residuary legacy must first abate before general legacies are required to do so is an ancient rule formulated in the courts to give effect to what the courts judged was the probable intention of deceased. Some rule had to be formulated where the silence of deceased on the question imposed on the courts the necessity of indicating his

choice. If the rule is unsound according to modern standards then it is for the Legislature to change it. That this is the appropriate forum for change is disclosed on examination of the legislative note accompanying the 1931 change in section 35 of Decedent Estate Law. This statute provides for the partial revocation of a will in the event of the testator's later marriage. Since 1931 the share of the surviving spouse in whose favor the statutory revocation is accomplished is payable " from the devisees and legatees in proportion to and out of the parts devised and bequeathed to them by such will." This rule for *pro rata* abatement of all legacies and devises in favor of the spouse was enacted because as the note says the prior rule was that " where there had been a partial revocation because of the marriage of the testator subsequent to the making of the will, the share of the surviving husband or wife  *  *  *  had first to be taken out of the residue and only the residuary legatees would necessarily suffer thereby." No similar legislative amendment has ever been made to section 17 of Decedent Estate Law. The common-law rule must be held operative in the absence of controlling judicial authority to the contrary. No such authority is to be found but on the contrary the weight of authority supports the continued application of the common-law principle.

The court accordingly holds that from the fund now ready for distribution to charity the bequest to the general legatee shall be paid in full. What remains of this fund shall be paid to the residuary charitable legatee.

Submit, on notice, decree construing the will and settling the account accordingly.