In the Matter of the Accounting of AMADEUS J. WARD, as Executor of CHARLES O. PATTBERG, Deceased, Respondent. WILLIAM PATTBERG et al., Appellants; UNEMPLOYMENT FUND OF LOCAL No. 119, PAPER CUTTERS UNION, et al., Respondents.— In a proceeding by the executor of a decedent's estate for the judicial settlement of his account as such executor, and for a construction of paragraph sixth of decedent's will, objectants, who are the decedent's next of kin, appeal from a decree of the Surrogate's Court of Kings County, which adjudges the bequest in said paragraph to be a valid charitable trust and directs that letters of trusteeship issue. Decree modified on the law by striking from the first decretal paragraph the words: " terms of said Will " and by substituting in place thereof the following: " purpose and intent of the Unemployment Fund

of Local No. 119, Paper Cutters Union ". As so modified, the decree is affirmed, with costs to all parties filing separate briefs, payable out of the estate. Findings of fact inconsistent herewith are reversed and new findings are. made as indicated herein. The bequest in question was of the residue of the estate to the respondent executor and trustee " in trust ", with direction to turn it over, the entire amount at one time, or in portions from time to time, in his discretion, to the " Unemployment Fund of Local No. 119, Paper Cutters Union ". This fund was created by the said trade union local in 1928, at which time the local also adopted certain provisions to govern the fund's administration. According to those provisions, as later changed by amendments to the union's constitution, the source of the moneys of the fund are regular assessments upon members of the union and the profits of the union's annual ball; these moneys are to be kept separately from other moneys of the union, and are to be disbursed to qualifying members of the union during certain periods of unemployment, according to a certain schedule and subject to certain limitations, and to members who have attained the age of sixty-five years and who are no longer able to work at their usual occupation at the trade because of such age, again according to schedules and limitations; and the administrators of the fund are to be five members of the union, two of whom shall be those holding certain stated offices and three of whom shall be " lay members." It was conceded that both the union and the fund are unincorporated associations. Although generally a bequest to an unincorporated association is void (*Owens* v. *Missionary Society of M. E. Church,* 14 N. Y. 380, 385; *Mount* v. *Tuttle,* 183 N. Y. 358, 367; *Ely* v. *Megie,* 219 N. Y. 112, 142-143; *Fralick* v. *Lyford,* 107 App. Div. 543, affd. 187 N. Y. 524), this rule was modified by the enactment of chapter 701 of the Laws of 1893 (the so-called Tilden Act; presently section 12 of the Personal Property Law) so as to exempt therefrom bequests to charitable or benevolent uses, and other eleemosynary uses (see *Matter of Merritt,* 280 N. Y. 391, 399; *Baxter* v. *McDonnell,* 155 N. Y. 83, 93; *Murray* v. *Miller,* 178 N. Y. 316, 321). Construction of a bequest as being for a charitable or benevolent purpose should be preferred if it " devotes the fund included therein to purposes permitted by law and to the good of humanity ". (*Matter of Robinson,* 203 N. Y. 380, 388.) The fact that the persons who are in the class which is intended as the ultimate beneficiary are required, as a condition for inclusion therein, by prescription dehors the bequest itself, to contribute certain sums of money periodically to the fund which is nominally the beneficiary of the bequest does not in itself prevent the bequest from being charitable and benevolent. (Cf. *Matter of MacDowell,* 217 N. Y. 454, and *Butterworth* v. *Keeler,* 219 N. Y. 446.) Further, as stated in the *MacDowell* case (*supra*), " When the purpose accomplished is that of public usefulness unstained by personal, private or selfish considerations, its charitable character insures its validity " (p. 460), and " It has often been held that a public charity need have no special reference to the poor " (p. 463). Classes of beneficiary comparable to the one presently in question, namely, followers of a specified trade or occupation, employees of a named business establishment, or even persons living in a named locality, have been held not to bar characterization of bequests as charitable or benevolent. (See *Matter of Skuse,* 165 Misc. 554, 556, and authorities there cited.) (See, also, *Matter of Howells,* 146 Misc. 169.) Moreover, bequests for purposes similar to the instant one, and for the benefit of members of associations of working people, and even members of a trade union have been upheld. (*Matter of Geller,* 201 Misc. 381; *Matter of Fox,* N. Y. L. J.,

June 24, 1946, p. 2499, col. 7; *Matter of Casper*, N. Y. L. J., March 7, 1947, p. 909, col. 1.) However, since no person has been named trustee to execute the objects of the bequest, we hold that title to the residuary estate is vested in the Supreme Court. (Personal Property Law, § 12, subd. 1.) The person nominated in the will as trustee to receive the bequest and turn it over to the said fund may serve as trustee to administer the bequest himself according to the purposes and intent of the said fund. Adel, Wenzel and Schmidt, JJ., concur; Nolan, P. J., dissents and votes to reverse and to remit the proceeding to Surrogate's Court for the entry of a decree as prayed for in the objections interposed by appellants, with the following memorandum: Decedent's will provided that his residuary estate should be devised and bequeathed to his executor and trustee, in trust, and directed his executor and trustee, in his discretion, to "turn over" such residuary estate "to the Unemployment Fund of Local 119, Paper Cutters Union". The union is an unincorporated association, and the unemployment fund is maintained by the union, as provided in its by-laws. In my opinion, this bequest was not for a charitable or benevolent use, within the meaning of section 12 of the Personal Property Law. It is not provided that the so-called trust be administered for any particular use. All that is provided or required is that it be turned over to the designated fund, which is sustained by compulsory contributions by the members and the profits of the union's annual ball. Purchase of tickets for the annual ball is required of the members of the union. The purposes for which the fund has been used are unquestionably commendable, and the application of the fund since its creation has conferred substantial benefits upon the unemployed members of the union. It is doubtful, however, that the use of the fund has been charitable within the meaning of the statute. The fund was established by the union membership, for their own benefit, and was intended to be sustained by the allocation of dues and by other compulsory contributions. Payments from the fund are not in the nature of charity, but are rather in the nature of unemployment insurance, purchased by the members, in accordance with the union rules. Moreover, there appears to be no limitation, in the constitution or by-laws of the union, which restricts the use of the fund to the relief of unemployment. Pursuant to the by-laws this fund, like all other funds, is the property of the union for its legitimate purposes. Concededly, all of such purposes are not charitable, and since there is no restriction on the use of the fund in the testator's will, there is nothing to prevent the union membership from devoting some part of the fund, at least, from time to time, to such legitimate union purposes as may be considered desirable and proper. Presumably the testator, a member of the union, was aware of this fact, but gave no direction as to the use to be made of the bequest, apparently intending that it might be used for any legitimate purpose that the unemployment fund could be used for, under the constitution and by-laws of the union, even though such purpose might not be charitable. Carswell, J., not voting.