In the Matter of the Accounting of HENRY J. FOSTER, as Executor of ROCCO FANELLI, Deceased.

Surrogate's Court, Bronx County, May 2, 1955.

*Oscar S. Blinn* for executor, petitioner.

*Henry Sforza* for Church of the Immaculate Conception.

*August A. Caserta* for Anna Fanelli.

*Jacob K. Javits, Attorney-General (Kenneth D. Shearer* of counsel), in his statutory capacity under section 12 of Personal Property Law and section 113 of Real Property Law.

McGRATH, S. In this accounting proceeding, the executor petitions for a construction of paragraph "Fifth (a)" of the will. The widow who is the sole distributee has invoked the provisions of section 17 of the Decedent Estate Law and in addition challenges the validity of the trust provided for in paragraph "Fifth (a)". Both the Attorney-General representing indefinite and charitable beneficiaries and the charitable remainderman under paragraph "Fifth (b)" of the will, have interposed certain objections. The various points raised by the parties may be resolved into three questions. First, whether a valid charitable trust has been created under paragraph "Fifth (a)" of the will. Second, if the trust is valid, whether the "excess" under section 17 of the Decedent Estate Law which all parties conceded would be violated, would require an apportionment between the trustee under paragraph "Fifth (a)" and the charity which takes the remainder under paragraph "Fifth (b)". The final question involves the manner of executing such a trust, if valid.

The decedent herein provided in his will for his funeral, the sale of certain real property and a bequest of $2,500 to his spouse, who was sixty-one years of age at the time of his death. He then placed the remainder of the debt-free estate in trust with the income payable to his wife during her lifetime.

Upon the termination of the life estate for his wife, the decedent in paragraph "Fifth" of his will disposes of the rest, residue and remainder of the estate in the following manner: "(a) I give and bequeath my shares and all rights in American

Telephone and Telegraph Company stock to my Trustee hereinafter named In Trust for the following charitable purpose: To use the net income and interest therefrom for the benefit of the children of employees of the 195 Broadway Corporation, or its successors, 195 Broadway, Borough of Manhattan, City of New York. (b) I give, devise and bequeath all of my remaining property to the Church of the Immaculate Conception, 754 Gunhill Road, Bronx, New York, for the following charitable purposes: To use the income therefrom in equal shares, share and share alike, for the Church, the Church School and the St. Vincent de Paul Society for the benefit of children.''

The president of the 195 Broadway Corporation, a subsidiary of American Telephone and Telegraph Company, was designated as executor and trustee and in paragraph '' Seventh '' of the will, the decedent described in part the powers of the trustee in the following language: '' I further declare it to be my intention that my Trustee, or his successors, in administering Paragraph Fifth (a) of this Will, shall have full discretion, and his judgment shall be final, as to the beneficiaries of the trust and the amounts payable to or for each.''

It appears that there are ninety shares of American Telephone and Telegraph Company stock in the estate which is expected to produce income of approximately $810 per year. There are at present over 1,000 '' children of employees '' of the 195 Broadway Corporation.

It is the position of the widow that the trust under paragraph '' Fifth (a) '' being in perpetuity is not a charitable trust. It is claimed that the purpose set out in the will that the trust should be used for '' the benefit of '' employees' children does not necessarily indicate a charitable purpose; that the language would permit the expenditure of the income for purposes in no sense charitable; that this purpose expressed in the will is indefinite and uncertain and does not fall within the four principal divisions of charity; that the income could be expended without regard to the need or financial status of the beneficiary of the trust.

The liberality of the courts in matters involving charitable trusts has recently been re-expressed in *Matter of Pattberg* (282 App. Div. 770, affd. 306 N. Y. 835), a case which involved a gift to the unemployment fund of a local paper cutters' union. The Court of Appeals in *Matter of Potter* (307 N. Y. 504, 517) said: '' In *Matter of Pattberg* (306 N. Y. 835) we acted upon a principle which has long guided this court — that where a testator has apparently sought to leave money for a charitable pur-

pose, a liberal construction is to be given to the terms of the will in order to uphold it and validate the bequest. The entire applicable portion of the will must be read and considered, and not merely isolated segments, and the intent is to be gleaned from that complete consideration ".

The rules of law applicable to the factual situation presented here have been considered in previously decided cases.

In *Matter of Skuse* (165 Misc. 554, 557), the court had said: " Formerly, if a *possibility* of use for private gain could be discerned under the language of the will the trust was deemed invalid and noncharitable. Now, however, the theory applied is that the ' language should be construed in a broad and liberal spirit in accordance with his intention and the gift upheld, although the will may be susceptible of a construction which would permit the gift to be used for private or secular purposes,' * * * (*Matter of Durbrow*, 245 N. Y. 469, 474) ".

In *Matter of Antoni* (186 Misc. 988, 990), it was said: " Although an otherwise valid charitable trust would not be defeated by indefiniteness or uncertainty of the beneficiaries (Personal Property Law, § 12), the purpose or object of the trust must be sufficiently definite or certain as to fall within one or more of the four classifications [viz. trusts for the advancement of education; trusts for the advancement of religion; trusts for the relief of poverty and distress and trusts for other purposes beneficial to the community] ".

As was further said in *Matter of Durbrow* (*supra,* p. 474): " If * * * the gift * * * is so indefinite and uncertain as to include uses which are not in a broad sense charitable and religious, but may be personal, private or selfish in their character, its benevolent purpose will not save it. * * * If, on the other hand, a definite charitable purpose may be found within the limits of a testator's language; if, for example, it is reasonably clear that a testator had in mind that his bequest should be devoted only to purposes of Christian charity, his language should be construed in a broad and liberal spirit in accordance with his intention and the gift upheld, although the will may be susceptible of a construction which would permit the gift to be used for private or secular purposes."

It was said in *Matter of MacDowell* (217 N. Y. 454, 460), that: " When the purpose accomplished is that of public usefulness unstained by personal, private or selfish considerations, its charitable character insures its validity." In this case it was argued that the contemplation of an ambitious project with the limited funds is itself such an act of folly as should incline the

court to declare the trust invalid. The court stated in answer to this argument (p. 465) that: " Whether the purpose of the testatrix was wise or unwise is no concern of the court. The concern of the court is to determine whether the trust attempted to be created is valid or invalid and if it is susceptible of two interpretations, one of which renders it * * * valid, the court must, under well-settled rules, give to it that interpretation which will uphold its validity. * * * If circumstances render it impracticable to carry out the trust in the precise manner contemplated by the testatrix, the courts will so apply it as to accomplish the general charitable purpose which it was the design of the testatrix to carry out." (Cf. *Matter of Lewis,* 308 N. Y. 795.)

It is noted that the decedent in paragraph " Fifth (a) " has denominated the gift " for the benefit of the children " as being for a " charitable purpose." In paragraph " Fifth (b) ", the testator uses the same language with reference to the gift to the church for the use of the St. Vincent de Paul Society, an organization which concededly is devoted solely for the purpose of assisting the poor. The court reads this bequest under paragraph " Fifth (a) " as a gift to charity, limited to a definite segment of the community. A general charitable intent has been expressed by the testator and the " Broadness of scope and generality of purpose do not in themselves breed impossibility of execution " (*Matter of Durbrow, supra,* p. 475).

In *Matter of Finkelstein* (189 Misc. 180), this court held that a bequest of " ' one eighth of the money to charity ' " was not indefinite.

In *Matter of Antoni* (*supra,* p. 989), a purpose " ' to use the rents, issues and profits therefrom for the benefit of the widows and orphans ' " of a particular town was held valid. There the court held that the gift to widows and orphans suggests persons who were underprivileged, destitute or of limited means and admitted that there was a possible construction under the language of the will which could include persons neither poor nor destitute. The contentions that the objectives and the purposes of the attempted gift were so broad as to extend beyond the limits of charitable objectives and purposes were expressly rejected.

In *Matter of Skuse* (*supra,* pp. 555–556), it was stated that: " the mere restriction of the benefit to a particular or limited class of persons would seldom if ever be determinative of the question, so long, at least, as it contemplated the betterment of position of a general aggregate of persons of reasonable number

who, except for the charitable impulse of the testator, would not be natural objects of his bounty. Nor, would it seem, could it be said that any clear line is capable of demarkation as to the requisite financial status of a particular recipient in order to justify the characterization of the benefit to him as charitable." (See, also, *Matter of Pattberg,* 282 App. Div. 770, 771, *supra.*)

In *Matter of Killen* (124 Misc. 720, 721), the court was faced with an issue as to whether the following gift to be expended by the executor was indefinite and uncertain as to purpose: "for such charitable purposes as in his discretion will best meet my wishes. All of said rest, residue and remainder of my estate to be expended in Ireland for charitable purposes."

At page 722, the court said: "A charitable purpose pervades and dominates the instant will. It contemplates the use of the money for charitable purposes only. The testatrix had no other intent. A corporation cannot be selected as a beneficiary unless it accepts the gift as a charitable one. The Supreme Court [now also the Surrogates' Court by virtue of § 12 (2) P. P. L.] has the power and is charged with the duty of seeing that the fund shall be devoted to charitable purposes." [Citing cases.]

The wide discretion given to the trustee herein does not import any consent by the testator to a private and individual use of the fund. The trustee is vested with discretion to use this fund impersonally and for the general benefit of the children of the employees of this corporation. That use of this fund is charitable (cf. *Matter of Westinghouse,* 156 Misc. 320, 322; see, also, *Eagan* v. *Commissioner of Internal Revenue,* 43 F. 2d 881).

It is conceded by all the parties that, with a valid charitable trust under paragraph "Fifth (a)" there is a violation of section 17 of the Decedent Estate Law since more than one-half part of the estate, after the payment of debts, by virtue of the provisions of the will, would pass to charity. The "excess", however, will not be payable until the termination of the primary life estate for the life of the widow, due to the fact that a valid trust of the entire residue was created which includes such "excess" (*Matter of Buck,* 158 Misc. 111, citing *Matter of Franklin Trust Co.,* 190 App. Div. 575; *Matter of Apple,* 141 Misc. 380 and *Matter of Sonderling,* 155 Misc. 403). While the "excess" is not now payable to the widow, "the fund is her property as distributee in the sense that she may alien it subject to the operation of the trust and she may dispose of it by her will." (*Matter of Buck, supra,* p. 113; see, also, *Matter of Chamot,* 201 Misc. 374, 377.)

The second question, involving apportionment, has been settled by the courts in *Matter of Morris* (175 Misc. 773, affd. 261 App. Div. 950, affd. 287 N. Y. 624). In that case it was held that the common-law principle of abatement regulates the shares of the general and residuary charitable legatees in the total fund, viz., the general legatee is to be paid in full and the residuary legatee is to be paid the rest of the maximum allowable to charity. In the instant case we have a specific bequest of the shares of stock to the trustee under paragraph " Fifth (a) " as against a general legatee of the remainder in paragraph " Fifth (b) " similar to the factual situation in *Matter of Gaubert* (164 Misc. 768), where the court said at page 771: " when a will makes a specific devise to a charity, such devisee will be entitled to receive the land in question (provided its value does not exceed half of the estate) at the value which it possessed at the date of the death of the testator and the solution of this benefit is to be preferred to general legacies to itself or other charitable beneficiaries if an abatement is necessary in the total of charitable gifts made, by reason of the fact that their aggregate value exceeds one-half of the estate. (*Matter of Ham,* 123 Misc. 889, 894; affd., as to this point, 213 App. Div. 487; affd. 242 N. Y. 536; *Matter of Johnston,* 76 Misc. 391, 394.) " Consequently the charitable legatee under paragraph " Fifth (b) " must bear the entire burden of the " excess " under section 17. of the Decedent Estate Law.

The executor-trustee has suggested a construction (now modified) of paragraph " Fifth (a) " to the effect that " the trustee shall use the income of the specific trust for or toward the expenses of education, or serious expenses of illness or surgery of such children (not over 25 years of age) of persons then employees of 195 Broadway Corporation, as he shall, in his discretion and in good faith deem to be in actual need of the same." The Attorney-General accepts this plan in principle. The court under its cy pres powers will adopt this proposed allocation of the income from the trust under paragraph " Fifth (a) " (*Matter of MacDowell,* 217 N. Y. 454, 465, *supra*; *Butterworth* v. *Keeler,* 219 N. Y. 446; see, also, *Conway* v. *Bowe,* 116 N. Y. S. 2d 182).

It would appear that in the computation under section 17 of the Decedent Estate Law, the factor should be 9.309 as the American Experience Table must be used in determining the " excess."

Settle decree in accordance with the determinations made in this opinion.