John D. Bennett, S.
The court is asked to determine the proper allocation of administration expenses and in connection therewith must construe the will. This question is vitally important because there will be no residuary left after payment of debts and administration expenses under the usual rules of abatement, and general legacies will also have to abate. Administration expenses will amount to about $250,000, incurred during a difficult administration of more than seven years.
The assets of the decedent in 1960 and 1961 when he executed the will and codicil were quite large and at his death in 1961 his gross estate amounted to approximately one and three-quarter million dollars. Outstanding debts were approximately $750,000. The principal issue is whether paragraph “ Seventh ” creates a preference to the Dr. Joseph M. Lotsch Foundation (hereinafter referred to for brevity as the Foundation), or *885 whether its legacy thereunder should abate proportionately with the other legacies. The following is paragraph 1 ‘ Seventh ’ ’ of the will:
“ I devise and bequeath to the Dr. Joseph M. Lotsch Foundation, Inc., a Delaware Corporation, for its general corporate purposes, an amount equal to the maximum amount which, when considered together with other devises and bequests herein of a similar nature, may be valid under Section 17 of the Decedent Estate Law of the State of New York, as such section may be amended from time to time. It is my intention that the above Foundation by this and other devises and bequests herein shall receive the maximum amount of property which may be devised or bequeathed to such an organization without permitting a surviving wife, child, descendant [sic] or parent to contest the validity of this devise or bequest or any devise or bequest hereunder to this or other organizations which may be subject to said Section 17.”
The executors computed the said bequest to the Foundation by first totaling the assets of the estate at the date of death, then subtracting the decedent’s debts. The remaining balance they divided in half for the purpose of measuring noncharity legacies, and from the other half subtracted the value of the other charitable bequests. The resulting balance they calculated to be the amount due to the Foundation. All parties, including the Attorney-General, concur in this calculation but they differ on the question of construction of paragraph “Seventh” as well as on the question of abatement of all bequests to charitable legatees.
The Attorney-General has filed objections and argues that the afore-mentioned paragraph and the use of the words *1 maximum amount” twice therein evidences an intent on the part of the testator to grant a preference to the Foundation over all other legatees. Incidentally, he also urges that the general pecuniary bequests to three other charities named in the will should likewise be paid in full and exempted from abatement to pay administration expenses.
Dealing first with the claim of preference, this, of course, depends upon the testator’s intention. As stated in volume 2 of Davids’ New York Law of Wills (§ 1073): “ The primary rule is that, if the assets available for the payment of pecuniary legacies are insufficient to satisfy all of the bequests in full, they abate ratably or proportionately, the presumption being, in the absence of anything to disclose a different intention, that the testator did not intend to prefer one to another. Otherwise stated, the rule is that a legacy is subject to abate *886 ment, unless there is something to indicate a different intention”. (See, also, § 1074 id.)
As stated in Matter of Smallman (138 Misc. 889, 895): “It has been uniformly held that ‘ the onus probandi is upon the party seeking priority, and proof must be clear and conclusive that the testator so intended. ’ (Florence v. Sands, 4 Redf. Sur. 206, 209.).” Quoting further, from Matter of Williams (27 Misc. 716, 717), Judge Wingate said in the Smallman case (p. 895): “ ‘ Among a group of general legacies which are mere bounties, priority will not be given to any of them unless the testator’s intention to create a preference is most clearly and unequivocally expressed, and the burden is strongly upon him who would brush away the maxim that equality is equity, and ask that one legatee should be fully satisfied to the loss and detriment of others equally as much and as deservedly entitled. Undoubtedly, in the event of a deficiency of assets, the court should, if possible, cause the loss to be borne equally among the beneficiaries.’ ”
As was further stated in the Smallman case (p. 896): “In practically every case where the question of abatement arises, the conditions existing when the case comes before the court are different from those which the testator contemplated at the time he executed the will.
“ The question is not, therefore, what he would have desired had he realized that his estate would be insufficient to pay all benefits in full, but what he actually had in mind when the will was made. The court is powerless to construe the will on the basis of the eventualities which have actually transpired since such an act would not amount to a construction of the will which was actually made, but would be a rewriting of the instru - ment by the court in the manner in which it might conjecture the testator would have wished, had he foreseen the actual turn of events. This the court is properly powerless to do.”
In Matter of Cameron (278 N. Y. 352, 358) it was said: ‘ ‘ A fundamental rule in the construction of wills requires that when the assets of the estate are insufficient to pay all general legacies in full, in the absence of a contrary intent shown by the will, all legacies abate proportionately. (Matter of Neil, 238 N. Y. 138.) Equality is the rule and preference the exception.”
The court has been unable to find any case which holds that a general bequest to charity would be preferred over any other general legacy. On the contrary, it was held in Matter of Werrick (135 Misc. 876, 877) that: “No rule of law prefers a general gift to charity as against any other general legacy. *887 Consequently, the charitable gift for masses will abate with the other general legacies named in the will.”
Applying the afore-mentioned rules, the court finds no specific language in the will, including clause ‘ ‘ Seventh ’ ’, which could be classified as a clear and unequivocal expression of a preference. Reading the will as a whole, what appears uppermost in the mind of the testator was the avoidance of any contest over his will. The in terrorem clause (“Ninth”) was directed not only against a probate contest but also against any attempt to 1 ‘ impeach, impede, impair, set aside or invalidate any of the provisions ’ ’ of the will. In expressing his intention in clause “Seventh” he also referred to a possible contest over “ the validity of this devise or bequest or any devise or bequest hereunder to this or other organizations which may be subject to said Section 17.”
The language of clause “ Seventh ”, therefore, does not indicate an intention to prefer the Foundation as against other charities or as against other noncharitable bequests, for the language is at least equally consistent with a purpose on the part of the testator to furnish a basis for measuring the amount of the legacies to the Foundation. There is no indication whatever in the will that the testator anticipated abatement of general legacies to ' cover the payment of administration expenses. Clause 11 Seventh ’ ’ appears at the end of a long list of general pecuniary bequests and precedes the residuary clause which also contains pecuniary bequests in stated minimum amounts. As stated in volume 7 of Warren’s Heaton, Surrogates’ Courts (6th ed., § 88, par. 2, subd. [c]): “ The mere order in which legacies are set up in the will has no bearing on determination of questions of preference and abatement.”
It is noted that the bequest to the Foundation was not made in a specific amount but left to be calculated subject to the size of the estate after debts, and subject also to the value of the stamp collection given to the Bible Society, as well as the specified dollar amounts to the three charities other than the Foundation. The bequest under clause “ ¡Seventh ” therefore was to that extent subordinate to the other charitable gifts. Then, too, the testator might well have considered the Foundation as being subordinate even to the residuary gifts for the benefit of his two sons and grandsons, for it is the substance and not the form or the physical location of clause “ Seventh” that is significant here.
To support his position the Attorney-General cites volume 4B of Warren’s Heaton, Surrogates’ Courts (6th ed., § 406, par. 14, subd. [e], p. 74-249) to the effect that “funeral *888 expenses, administration expenses, the federal estate tax and commissions are all paid from the share of the estate going to non-charity beneficiaries.” (Emphasis supplied.) (Citing Matter of Arnolt, 127 Misc. 579; Matter of Carnegie, 203 App. Div. 91, affd. 236 N. Y. 517; Matter of Seymour, 239 N. Y. 259.) The court notes that the quoted language is contained under a heading entitled “(e) General rules for making computations.” There are many cases on the question of abatement of excessive charitable bequests in order to comply with section. 17 of the Decedent Estate Law (now EPTL 5-3.3). However, no case has been found which holds that a general bequest to a charity beneficiary would not abate ratably with similar bequests to noncharity beneficiaries. Volume 7 of Warren’s Heaton, Surrogates’ Courts (6th ed., § 88, par. 2) also states that in the absence of an expressed intention by the testator the administrative rules of abatement will be applied in accordance with the presumption that the testator did not intend to prefer one legacy to another and that they abate equally.
The court finds no justification for reading into the will any intention to prefer the Foundation so far as abatement is concerned. The cases cited by the Attorney-General in support of his argument that the charities should be preferred in abatement do not cover that question, being more or less limited to questions of abatement as between different classes of charitable legacies, i.e., general as opposed to residuary; or else they cover questions of measurement and not abatement. His comparison of section 17 of the Decedent Estate Law with section 18 of the Decedent Estate Law is inapposite. The court’s view is that the statutory and case law does not warrant an expansion in favor of charities of the preferences which have been accorded to widows under section 18 of the Decedent Estate Law (now EPTL 5-1.1). Neither does the court consider that statutory and case law rules as to measurement and limitations on charitable bequests have any bearing' upon the ultimate question of abatement; that the administrative rules of abatement apply in the absence of a testamentary intent to the contrary. In Matter of Morris (175 Misc. 773, affd. 261 App. Div. 950), Surrogate Delehanty phrased this conclusion in very appropriate language (p. 774) “ The expansion of any new legal concept, valid enough for the purpose for which it was originally formulated, into regions already governed by established contrary principles unsettles the law and should, therefore, be avoided.” In that case Judge Delehakty ruled that a bequest to a general legatee should be paid in full and what remained would be paid to the residuary charitable legatee; *889 that the established common-law rule of equity in abatement should be uniformly applied.
In the opinion of this court the various theories advanced by the Attorney-General would introduce new legal concepts into regions already covered by established contrary principles and would not achieve a just result.
In summary, the usual abatement rules should be applied here. First, the legacies contained in the residuary clause and then the general legacies should abate ratably, considering the bequest in clause “ Seventh ” as a general legacy.