IN THE MATTER OF THE ESTATE OF JACOB MAYERS, Deceased.

Surrogate's Court, New York County, May 7, 1947.

*Manfred Nathan* and *Arnold J. Brock* for Martha Mayers, petitioner.

*Hunt, Hill & Betts* for Empire Trust Company and Richard O. Glaeser, executors and trustees, respondents.

*Frederick W. Scholem* for Isabel Anspach, respondent.

*Joseph V. McKee* for St. Vincent's Hospital of the City of New York, respondent.

*Stroock & Stroock & Lavan* for Montefiore Hospital for Chronic-Diseases, respondents.

*Alfred Englander* for Jewish Child Care Association of New York, respondent.

*Wolf, Haldenstein, Adler & Freeman* for Home for the Aged and Infirm Hebrews of New York, respondent.

*Rogers H. Bacon* for St. Luke's Hospital, respondent.

*House, Grossman, Vorhaus & Hemley* for Hospital for Joint Diseases, respondent.

*Benjamin, Galton & Robbins* for Mount Sinai Hospital, respondent.

*Curtis, Mallet-Prevost, Colt & Mosle* for Lenox Hill Hospital, respondent.

COLLINS, S. The decedent died on November 15, 1943, survived by his widow and his sister as his statutory distributees. The widow instituted this proceeding to obtain a determination that the will violates section 17 of the Decedent Estate Law in that

it bequeaths to charity more than one half of the estate after deduction of debts. If infringement of the statute be decreed, she asks a judicial determination of the extent of the violation and for such other and further relief as may be proper. It has been stipulated that decedent's gross estate was worth $2,453,069.39 at his death. The will gave noncharitable general and specific legacies aggregating $15,056.50. The residuary estate is set up in trust with directions to the trustees to pay the net income in equal portions to the decedent's wife and sister. Upon the death of one beneficiary the whole income is payable to the survivor. The trust terminates upon the death of the survivor and the corpus is then to be paid to eight charitable institutions.

At the outset it is necessary to consider the contention of the remaindermen of the trust that the present proceeding is premature and that no definitive determination is possible before the final accounting of the executors. The widow has heretofore attempted to obtain a judicial determination of the questions here presented. In a proceeding to determine her rights under section 18 of the Decedent Estate Law as well as her rights under section 17, the court passed upon the questions respecting her right of election but reserved the questions under section 17 for determination in the accounting proceeding of the executors. (*Matter of Mayers*, 184 Misc. 413.) Thereafter the executors filed an intermediate account and the widow urged that there be determined in that proceeding the validity of the gifts to the charities. The court held that it was not in a position to take any action on that question and that it must be presented by an independent proceeding or by appropriate formulation of the issues in a future accounting proceeding. (*Matter of Mayers*, N. Y. L. J. Feb. 15, 1946, p. 629, col. 6.) In this special proceeding the widow renews her demand for an adjudication of her rights and again the charities say that she must wait.

While the value of the gross estate has been stipulated and while the parties are in agreement as to the known debts owed by the decedent and reflected in the executors' accounts, the charities say that prior to the final accounting proceeding it cannot be known with certainty whether other debts, not now known, will be established. They point out that the Federal and New York State estate taxes have not been finally determined and paid and that there will be substantial attorneys' fees and possibly other administration expenses to be paid. The charities argue that since they take only the residue, that is, what remains after deducting debts, other legacies, expenses of administration and estate taxes expressly charged against the residue (*Matter*

*of Gray*, 176 Misc. 829, 831, 833, affd. 266 App. Div. 732, affd. 292 N. Y. 532), the value of the gift to them cannot be accurately calculated until all the charges against the residue have been finally fixed and determined.

The executors take a different position and contend that it is imperative that the court in the present proceeding determine at least the proper *formula* to be used in measuring the permissible gifts to charity when a challenge under section 17 has been asserted. They are now engaged in a proceeding to fix estate taxes. They say that there are at the present time two very different rules deducible from the court decisions and said to be applicable to this problem. The first rule was explained and applied in *Matter of Buck* (158 Misc. 111, 158 Misc. 114) and *Matter of Lord* (155 Misc. 628) and the second rule was expounded in *Matter of Miranda* (151 Misc. 459) and *Matter of Gaubert* (158 Misc. 444). No appellate tribunal has ruled on the interpretations of the statute given in the cited cases. In the estate tax proceeding the taxing authorities took the position that of two different rules applied by courts of equal standing, they should adopt the one that would provide the greater tax and accordingly they used the rule applied in *Matter of Miranda* (*supra*) which resulted in a reduction of the charitable exemptions by $470,727.77, and a consequent substantial increase in the estate tax. The executors intend to contest the tax assessments. In order to vindicate their argument that the charitable gifts were properly valued under the rule as set forth in *Matter of Buck* (*supra*), they require an authoritative decision in this estate of the question in issue. They say that they cannot file their final accounting until the estate tax proceedings have been closed and that those proceedings cannot be disposed of until the courts finally and decisively rule in respect of the formula to be applied in determining the amounts that are to be paid ultimately to the charities and to the distributees. It is pointed out that once the formula has been finally determined the application of it to the particular facts of this case will be simple.

The attorneys for the executors will undoubtedly be required to render substantial legal services in the pending estate tax proceedings in this proceeding and in the final accounting proceeding. The court could not say in advance what the ultimate value of these services will be or what will be the amount of the estate taxes finally assessed and paid. Other proper administration expenses may be established. It is clear, therefore, that even if the court should say that there had been a violation of the statute on the basis of the estate finances as they

now appear, it would be probable that the figures will be different when the final account of the executors is judicially settled. Moreover, the distributees would gain no present benefit even if a violation could be established and the probable extent now determined, for they would not be entitled to payment of the excess over the permissible gifts to charities until after the termination of the trust. (*Matter of Buck,* 158 Misc. 111, 112, *supra; Matter of Gaubert,* 158 Misc. 444, 446, *supra; Matter of Apple,* 141 Misc. 380, 387.) However, the effective administration of this estate requires that the executors now be instructed in respect of the proper admeasurement of the permissible gifts to the charities.

Under these circumstances the court will grant the petitioner's prayer for relief but only to the extent suggested by the executors, will construe the statute and will determine the correct formula to be used in measuring the maximum allowable gift to the charities.

As heretofore stated the gross estate aggregates almost two and one-half million dollars. The use of figures approximating the estate finances would tend to complicate a discussion of the conflicting rules, and in order to render the rule applied by the court more easily understandable, the court will deal with an entirely assumed state of finances. It will assume a gross estate of $100,000 and debts of $20,000. Section 17 of the Decedent Estate Law provides that no person having a wife shall by his will bequeath to charitable corporations " * * * in trust or otherwise, more than one-half part of his * * * estate, after the payment of his * * * debts, and such devise or bequest shall be valid to the extent of one-half, and no more." In the assumed state of facts the decedent left an estate after the payment of his debts of $80,000, and accordingly he could bequeath to charity no more than $40,000. There is and could be no difference of opinion among any of the authorities up to this point in the computation.

It is assumed further that the actual value of the residuary estate after payment of all debts, legacies, administration expenses and taxes is $72,000. Since the will directs that the residuary estate is to be held in trust for two lives and that the remainder is to go to charity at the termination of the trust, other text of section 17 is pertinent. It reads: " The value of an annuity or life estate, legal or equitable, shall not be computed upon the actual duration of the life, but shall be computed upon the actuarial value according to the American Experience Table of Mortality at the rate of five per centum per annum.

Such value shall be deducted from the fund or property, which is subject to the annuity or life estate, in order to ascertain the value of a future estate or remainder interest passing to such society, association, corporation or purpose." It is assumed that the value of the equitable life estates, computed as directed by the statute, is $22,000. The tenor of the statute clearly directs that there be deducted from $72,000 (the actual residuary estate) the sum of $22,000 (the value of the life interests) thus leaving the sum of $50,000, which ostensibly represents " the value of a future estate or remainder interest passing to such " charitable corporations. The maximum amount that can be given to charity is found to be $40,000 and the excess over the permissible amount is, therefore, $10,000. To this point all of the authorities are in agreement. From this point a conflict in the rules appears.

Under the rule relied upon by the charities and the executors (*Matter of Buck, supra; Matter of Lord, supra*) the sum of $10,000, which represents the excess over the permissible amount, is earmarked for the distributees of the testator at the termination of the trust and the balance of the fund is to go to the charities. If it be assumed that the trust fund remains constant with neither gains nor losses of principal, then at the termination of the trust the sum of $10,000 will be payable to the distributees of the testator under the cases cited and the balance of the *actual* residue, which would be $62,000, will be distributed to the charities.

Under the rule which the widow and sister advance (*Matter of Miranda, supra; Matter of Gaubert, supra*), $40,000 is the maximum amount payable to charity at any time and that sum is earmarked in the trust for payment to the charities as remaindermen at the termination of the trust, and the balance of the actual residue goes to the statutory distributees. If the trust assets suffer neither gain nor loss there would be payable to the charities under this rule the sum of $40,000 and to the distributees the sum of $32,000. It will be noted that on the figures which the court has assumed the application of one of the rules rather than the other will vary the respective shares of the charities and the distributees by $22,000. Under the second rule the distributees would receive $22,000 more than under the first rule and the charities would suffer a corresponding decrease. Upon the basis of figures used in the estate tax proceeding in this estate the difference was $604,465.94.

The rule for which the distributees contend (*Matter of Miranda, supra; Matter of Gaubert, supra*) produces curiously inconsistent results. For example, if in the assumed state of

finances only the life expectancies are changed and if one half of the estate, less debts, is $40,000 and the *present value* of the remainder gift were also $40,000, there would be no violation of the statute and the gift to the charities is valid notwithstanding the fact that the charities will ultimately receive assets of $72,000. If, on the other hand, the life expectancies were again varied ever so slightly so that the *present value* of the remainder were $40,001, there would be a violation to the extent of $1 and the charities could never receive more than $40,000 no matter when payable. Thus an attempt to give $1 more would actually reduce the gift by $32,000.

In *Matter of Miranda* (*supra*) it was found that one half of the estate, less debts, amounted to $6,107.79 and the *present value* of the remainder was $7,615.33. The court said (p. 462): " As this exceeds one-half of the net estate, it is apparent that the terms of the statute are violated and the gift to the hospital becomes one of $6,107.79. * * * Under the amendment to the section, this is payable without addition, at the time designated by the testatrix, which is upon the death of the survivor of the life tenants." The reference to " the amendment to the section " is to that portion of section 17 which provides that when payment of a bequest to charity " is postponed, in computing the one-half part of such society, association, corporation or purpose, no allowance may be made for such postponement for any interest or gains or losses which may accrue after the testator's death." This text was added to the statute in 1929 (L. 1929, ch. 229) upon the recommendation of the Decedent Estate Commission. The background of the amendment was discussed and its purpose and scope were fully explained by Mr. Surrogate FOLEY in *Matter of Lord* (155 Misc. 628, 630–631, *supra*) and by Mr. Surrogate DELEHANTY in *Matter of Kaufman* .(158 Misc. 102), and need not be repeated in detail here. It is sufficient to recall that the amendment was intended to abrogate the rule enunciated in *Matter of Seymour* (239 N. Y. 259) which transformed a remainder interest into a general legacy in a fixed amount theoretically payable at once and which supplied an allowance of interest as a compensating factor for the theoretical postponement. " There was no intention, either expressed on the part of the Commission or implied on the part of the Legislature that the amendment made in 1929 should affect the rule then existing which provided for the valuation of the life estate and for its deduction from the corpus of the trust where the remainder went to charity. To have eliminated the inclusion of the value of the life estate as an element in the

computation would have been an unwarranted attempt to ignore the fact that a real benefit was passing to a life tenant within the class of non-charities. *It would also have disregarded the fact that the benefit to the charity was actually reduced by the value of the life estate.* No such unjust purposes were intended." (*Matter of Lord, supra,* pp. 630–631. Emphasis supplied.)

As the Surrogate correctly pointed out in *Matter of Buck* (*supra,* p. 115): " The whole difference between the surrogates is due to a difference in viewpoint as to what is the true value of the gift to charity. The rule stated in *Matter of Miranda* (*supra*) ignores the fact that the gift of a remainder is not a present gift and that the future amount of the gift of a remainder is not the present value of the remainder interest. The statute deals with the *present* value of the whole estate. It says that not more than one-half of that *present* value, less only debts, shall be given to a charity. It follows in logic that if the actual gift to charity, no matter when payable, has a present value of not more than half of the gross estate, less debts, the gift is valid. To the extent that it is ascertained to be valid it cannot be varied in amount by any allowance for the fact that an intervening life estate lasted longer than the tables indicated it would last. Nor can the amount payable be varied upward by assuming, as was done in *Matter of Seymour* (239 N. Y. 259), that the *present* value is deemed a legacy of that amount to which compound interest is to be added until actual payment. The rule in *Matter of Seymour* (*supra*) has been abolished so far as such accretions are concerned but the statutory change of 1929 did not say that a dollar payable in the future is worth a dollar payable now."

Section 17 prohibits the giving to charity of more than one half of the estate after the payment of debts but it expressly and clearly provides that the "bequest *shall be valid to the extent of one-half* * * * ." (Emphasis supplied.) The statute instructs the parties to ascertain " the value of a future estate or remainder interest passing to " the charities and it contains detailed and precise directions for calculating such value. If the value so computed exceeds the amount that may be given to charity, the gift is not valid in its entirety but it is valid to the extent of one half of the estate, less debts. The rule advocated by the distributees (*Matter of Miranda, supra*) does not validate the gifts to charity to the extent of one half of the estate, less debts, but validates them only to a lesser degree. It permits charity to take only a gift whose *future* value equals the maximum permissible gift but whose present value, computed in accordance with the statute, is considerably less. The court

cannot adopt a rule which itself violates the terms of the statute.

The court is also of the view that the rule advanced by the executors and the charities (*Matter of Buck, supra*) is not in full accord with the letter or the spirit of the statute. On the basis of our assumed state of facts (actual residue, $72,000; value of remainder interests, $50,000; one half of the estate less debts, $40,000) this rule would earmark $10,000 for the distributees and direct payment of that amount to them at the end of the trust term. The balance of $62,000 would be paid to the charity remaindermen. This rule correctly follows the statute in that it deals with " the value of a future estate or remainder interest passing to such " remaindermen, computed according to the statutory directions. It correctly ascertains the amount of the excess *based upon present values*. However, it awards to the distributees only a *future* payment limited to the *present* value of the excess and thus permits the charities to take a gift whose *present value* exceeds one half of the estate, less debts. The statute expressly says that a gift to charity " shall be valid to the extent of one-half, *and no more.*" (Emphasis supplied.) It directs how the value of a remainder interest shall be computed. By necessary implication it says that the maximum remainder interest that charity can take is one which when valued in accordance with the statutory directions equals one half of the estate less debts. When there is to be deducted from the actual trust assets only the present value of the excess, it is apparent that the charities receive a gift whose present value exceeds the maximum permissible gift.

When the statute is properly applied, the present values which establish the limit of the charitable gift and also the amount of the excess over that limit establish also the ratable interest of the charities and the distributees in the sum to be paid in the future. The present values are used to determine the *proportions* of interest in the fund held in trust. The proportions when once established do not vary. They project themselves into the future. Applying this idea to the assumed set of facts in the assumed estate the charities will collectively receive four fifths of the fund when available for distribution and the distributees one fifth. The amount which each participant thus receives is an amount which as of the date of distribution represents the present value on the basis of which the participations were established. In other words, at the time of the termination of the trusts in the assumed estate, the charities will collectively receive property which has a *present* value of $40,000 and the distributees will receive property which has a *present* value of $10,000.

There remain for consideration certain incidental questions raised by the parties in respect of the computations. The widow contends that all figures used in the computations must be based upon estimates and theoretical values as of the date of death of the testator without giving any consideration to actual estate finances. She argues that the debts to be deducted from the estate for the purpose of determining the maximum gift to charity are to be ascertained as of the time of death without giving any effect to contingencies thereafter arising which might increase, decrease or eliminate the testator's obligation. Under her theory the residuary estate is to be computed by deducting therefrom those administration expenses which were estimated in the light of circumstances existing on the date of death without regard to the actual expenses that may be properly payable. There is no basis in the statute for this contention. Except for the direction that a life estate is to be computed upon the actuarial value rather than actual duration of life, the statute deals with realities and not with theoretical figures. The statute says that the testator can give to charity no more than one-half of his estate "after the payment of his * * * debts * * * ." It contemplates the just debts of the testator which are allowed or judicially determined to be payable. (*Matter of Epstein*, 176 Misc. 494, 500.) When the charities are given an interest in the residuary estate, the value of their interest depends upon the amount of the actual residue computed after deducting all debts, legacies, funeral and administration expenses. (*Matter of Kaufman*, 158 Misc. 102, 104, *supra; Matter of Gaubert*, 158 Misc. 444, 445, *supra; Matter of Lord*, 155 Misc. 628, 631, *supra*.) The will directs that all estate taxes be charged against the residue and all such charges must be deducted in order to find the value of the gifts to charity. The actual residuary estate turned over by the executors to the trustees is to provide the basis for the calculation of the value of the future estate bequeathed to charity.

The executors ask whether in figuring the value of the residuary estate they are to deduct the Federal estate tax computed on a distribution pursuant to the will without regard to section 17 or the tax computed on the basis of gifts as limited by section 17. The answer must be that they are to deduct taxes actually paid and charged against the residue.

By way of summary the court gives the following directions. From the gross value of the assets left by the testator there is to be deducted the amounts of his debts paid by the executors. One half of the difference represents the maximum permissible

gift to charity. The actual residue distributable to the trustees is to be determined. The value of the life estates is to be computed upon the actuarial value according to the American Experience Table of Mortality at the rate of 5% per annum and such value is to be deducted from the actual residue. The difference represents the value of the remainder passing to the eight charitable corporations. If the value of the remainder does not exceed the maximum permissible gift to charity, the gift is entirely valid. If the value of the remainder exceeds the maximum permissible gift, the excess represents the *present value* of the *future* interest vesting in the distributees. At the termination of the trust, the charities will be entitled to receive actual trust assets in the proportion that the maximum permissible gift bears to the present value of the whole remainder. The distributees will be entitled to receive actual trust assets in the proportion that the present value of the excess bears to the present value of the whole remainder.

Submit decree on notice determining this special proceeding accordingly.