In the Matter of the Will of JACOB MAYERS, Deceased. MARTHA MAYERS et al., Appellants; EMPIRE TRUST COMPANY et al., Executors and Trustees under the Will of JACOB MAYERS, Deceased, et al., Respondents.

Argued May 16, 1949; decided July 19, 1949.

*Arnold J. Brock, Manfred Nathan* and *William P. Balaban* for Martha Mayers, appellant. I. The rule that a violation of section 17 of the Decedent Estate Law transforms a residuary gift to charity, uncertain in amount, into a general legacy in the amount of the permissible maximum, is controlling. (*Matter of Skillman,* 247 App. Div. 327; *Hollis* v. *Drew Theol. Seminary,* 95 N. Y. 166; *Matter of Seymour,* 239 N. Y. 259; *Matter of Brooklyn Trust Co.,* 179 App. Div. 262; *Matter of Lord,* 155 Misc. 628; *Matter of Kaufman,* 158 Misc. 102; *Matter of Buck,* 158 Misc. 111; *Matter of Miranda,* 151 Misc. 459; *Matter of Gaubert,* 158 Misc. 444; *Matter of Sonderling,* 155 Misc. 403; *Matter of Sugden,* 249 N. Y. 541.) II. There was a violation of section 17 by virtue of the fact that the charities receive more than one half of the gross estate after the payment of debts. (*Hollis* v. *Drew Theol. Seminary,* 95 N. Y. 166; *Matter of Seymour,* 239 N. Y. 259.) III. For the purpose of calculating whether section 17 has been violated, estate taxes must be calculated as if the will were administered as written. (*Blair* v. *Commissioner of Internal Revenue,* 300 U. S. 5; *Uterhart* v. *United States,* 240 U. S. 598; *Freuler* v. *Helvering,* 291 U. S. 35.) IV. The court below had a sufficient basis to determine the amount of attorneys' fees to be used in the calculation to deter-

mine whether section 17 had been violated. In failing to use those figures and to make a determination based thereon the Surrogate erred. (*Matter of Westurn,* 152 N. Y. 93; *Matter of Sanford,* 66 Misc. 395; *Matter of Durand,* 194 N. Y. 477; *Matter of Rathbone,* 170 Misc. 1030, 262 App. Div. 706, 287 N. Y. 708.) V. Section 17 of the Decedent Estate Law is a Statute of Limitations. In determining whether the statute has been violated the court must apply the statute as it is written. The Surrogate erred in failing to do so and in attempting to rewrite the statute. (*Hollis* v. *Drew Theol. Seminary,* 95 N. Y. 166; *Matter of Buck,* 158 Misc. 111.)

*Frederick W. Scholem* for Isabel M. Anspach, appellant. Paragraph " Sixth " of the will violates section 17 of the Decedent Estate Law. (*Matter of Seymour,* 239 N. Y. 259.)

*James E. Bennet, Jr.,* and *Helen F. Tuohy* for Empire Trust Company and another, as executors and trustees under the will of Jacob Mayers, deceased, respondents. I. The decree of the Surrogate correctly carries out the intent of section 17 that charity shall receive one half and no more. (*Hollis* v. *Drew Theol. Seminary,* 95 N. Y. 166; *Matter of Apple,* 141 Misc. 380; *Matter of Kaufman,* 158 Misc. 102.) II. The effect of the 1929 amendment was to abolish the rule of *Matter of Seymour* (239 N. Y. 259). (*Matter of Kaufman,* 158 Misc. 102.) III. In any event, the general legacy theory should not be extended to the instant case. (*Matter of Miranda,* 151 Misc. 459; *Matter of Sonderling,* 155 Misc. 403; *Matter of Gaubert,* 158 Misc. 444; *Matter of Morris,* 175 Misc. 773, 261 App. Div. 950, 287 N. Y. 624; *Matter of Brooklyn Trust Co.,* 179 App. Div. 262.)

*Robert D. Steefel, Davis S. Galton, Rogers H. Bacon* and *Louis S. Posner* for St. Luke's Hospital and others, respondents. I. The Kings County rule by which a violation of section 17 transforms a residuary gift to charity, uncertain in amount, into a general legacy in the amount of the permissible maximum is not the law. (*Matter of Brooklyn Trust Co.,* 179 App. Div. 262; *Matter of Seymour,* 239 N. Y. 259; *Matter of Kaufman,* 158 Misc. 102; *Matter of Buck,* 158 Misc. 111; *Matter of Lord,* 155 Misc. 628; *Matter of Voelker,* 158 Misc. 97; *Matter of Schalkenbach,* 155 Misc. 332; *Hollis* v. *Drew Theol. Seminary,* 95 N. Y. 166; *Matter of Morris,* 175 Misc. 773, 261 App. Div. 950, 287

N. Y. 624.) II. The decision of the Surrogate correctly carries out the purport of section 17 of the Decedent Estate Law that the charities shall receive the maximum permissible gift, no more and no less. (*Hollis* v. *Drew Theol. Seminary,* 95 N. Y. 166.) III. If a violation of section 17 transforms a residuary gift to charity into a general legacy payable on the death of the life tenant, such general legacy must be in an amount which has a present value equal to one half of the gross estate less debts, computed upon the life expectancy of the life tenant. IV. The court below was correct in determining that the estate taxes actually due and payable must be used in calculating whether or not section 17 has been violated. (*Matter of Sonderling,* 155 Misc. 403; *Matter of Lord,* 155 Misc. 628; *Matter of Gray,* 176 Misc. 829, 266 App. Div. 732, 292 N. Y. 532.) V. The actual allowances made to the attorneys for the charitable remaindermen must be considered for purpses of determining whether or not there has been a violation under section 17. (*Matter of Watson,* 149 Misc. 235; *Matter of Williams,* 148 Misc. 14; *Matter of Billings,* 141 Misc. 84; *Matter of James,* 264 App. Div. 885; *Matter of Sayre,* 179 App. Div. 269.)

*Joseph V. McKee* for St. Vincent's Hospital, respondent. I. No determination can be presently had that paragraph " Sixth " of the will violates section 17 of the Decedent Estate Law. (*Matter of Gray,* 176 Misc. 829, 266 App. Div. 732, 292 N. Y. 532; *Matter of Rathbone,* 170 Misc. 1030, 262 App. Div. 706, 287 N. Y. 708.) II. A residuary gift to charity is an actual remainder interest; if it is in excess of the permissible statutory amount, section 17 of the Decedent Estate Law does not theoretically transform this residuary gift, uncertain in amount, into a general legacy for a fixed sum. It merely limits the portion of the residuary estate payable to charity to the statutory maximum. (*Matter of Brooklyn Trust Co.,* 166 N. Y. S. 513.) III. Where there is a demonstrated excess over the permissible maximum gift to charities the formula for distribution set up by the Surrogate should be applied. IV. The statute requires that the present value of the actual amount which will ultimately go to charity shall not exceed the permissible maximum. V. The Surrogate was correct in instructing and directing the executors, in determining the actual residue, to deduct administration expenses actually paid.

BROMLEY, J.   On this appeal we must determine the appropriate rule for the ultimate disposition of trust assets under section 17 of the Decedent Estate Law when a testamentary gift in remainder to charity has been found to violate the statute.

Jacob Mayers, a resident of New York County, died on November 15, 1943, survived by a widow and a sister, appellants herein.   He left an estate which the parties agree amounted to $2,453,069.39 and debts amounting to $93,592.56.   By his will Mayers gave a number of small legacies and directed that the residue was to pass in trust to his wife and sister for their lives. Paragraph sixth of the will directed that upon the death of the surviving beneficiary the residue is to paid to eight charitable institutions.

Section 17 of the Decedent Estate Law provides: '' No person having a husband, wife, child, or descendant or parent, shall, by his or her last will and testament, devise or bequeath to any benevolent, charitable, literary, scientific, religious or missionary society, association, corporation or purpose, in trust or otherwise, more than one-half part of his or her estate, after the payment of his or her debts, and such devise or bequest shall be valid to the extent of one-half, and no more. *The validity of a devise or bequest for more than such one-half may be contested only by a surviving husband, wife, child, descendant or parent. When payment of a devise or bequest to such society, association, corporation or purpose is postponed, in computing the one-half part of such society, association, corporation or purpose, no allowance may be made for such postponement for any interest or gains* (or losses) *which may accrue after the testator's death.* (The value of an annuity or life estate, legal or equitable, shall not be computed upon the actual duration of the life, but shall be computed upon the actuarial value according to the American Experience Table of Mortality at the rate of five per centum per annum.   Such value shall be deducted from the fund or property, which is subject to the annuity or life estate, in order to ascertain the value of a future estate or remainder interest passing to such society, association, corporation or purpose.) '' *

---

\* The first sentence is the statute as it read prior to 1929.   The language in italics was added in that year (L. 1929, ch. 229); and the language within the parentheses was added in 1936 (L. 1936, ch. 288).

The widow and sister commenced this proceeding to obtain a construction of paragraph "Sixth" and a determination of the extent to which the gift to the charities violates section 17. Since the amount of the Federal estate tax and the allowances to attorneys, for services in connection with the tax proceedings and in the final accounting, have not been fixed, the Surrogate refused to determine whether the will now presents a violation of the statute. However, in order to permit the determination of the estate tax, the court granted the relief requested to the extent of instructing the executors as to the formulas to be employed (1) in measuring the maximum permissible gift to charity and (2) if a violation be found in distributing the corpus upon the termination of the trust. The necessity for the order at this time springs from the existence of two distinct rules for the determination of the amount which will pass to charity upon termination of the intervening interests, neither of which has hitherto been considered by an appellate court.

After directing that the executors compute the maximum permissible gift to the charities and assess the present value of the charitable remainder in accordance with the explicit statutory formulas, the Surrogate's decree correctly stated that if the present value of the remainder does not exceed the permissible gift the entire remainder is to pass to the charities upon termination of the trust. The controversial portions of that decree then provided as follows:

"2. If the said present value of the whole remainder exceeds the maximum permissible gift, the excess represents the present value of the future interest vesting in the distributees of the testator and the amount of the maximum permissible gift represents the present value of the future interest vesting in the charities named in Paragraph 'Sixth' of the Will.

"3. If an excess is found as computed above, then at the termination of the trust, the distribution by the Trustees is to be made as follows:

"To the charities, actual trust assets in the proportion that the maximum permissible gift bears to the said present value of the whole remainder.

"To the distributees, actual trust assets in the proportion that the excess bears to the said present value of the whole remainder."

The primary question here concerns the proper method for measuring the amount ultimately to be distributed to the charities. It has long been the rule that computation of the maximum permissible gift and the determination of a violation are to be made upon values of the several interests as of the testator's death (*Hollis* v. *Drew Theol. Seminary,* 95 N. Y. 166, 180; *Matter of Durant,* 194 N. Y. 477), and that is now the express command of the statute. The statute commands that a testamentary gift in violation of its provisions " shall be valid to the extent of one-half, and no more. * * * [and] * * * When payment of a devise or bequest to such society * * * is postponed, in computing the one-half part of such society * * *, no allowance may be made for such postponement for any interest or gains or losses which may accrue after the testator's death.''

Under the first of the conflicting rules applied prior to this proceeding, the ultimate disposition of the trust corpus has been determined by fixing a certain amount, equivalent to the excess over the permissible gift as of the testator's death, which was to be paid to the distributees of the testator upon termination of the trust, while the balance of the corpus was to paid to the charity (*Matter of Voelker,* 158 Misc. 97; *Matter of Buck,* 158 Misc. 111, 114). Under the second rule the maximum permissible value of the charitable gift has been used to fix the sum to be paid to the charity, and the statutory distributees were to receive the balance (*Matter of Gaubert,* 158 Misc. 444; *Matter of Sonderling,* 155 Misc. 403; *Matter of Miranda,* 151 Misc. 459). Herein the Surrogate has followed a third formula in ruling that the charities and the statutory distributees, respectively, upon termination of the life interests shall receive shares of the corpus in the same proportions as the present values of their interests bear to the present value of the entire future interest. Thus the charities will receive four fifths, and the distributees one fifth, of whatever assets are distributed.

The results reached under the several formulas will vary widely. Since the final figures for this estate have not been calculated, it will be clearer to follow the Surrogate and employ for comparison a hypothetical residuary estate of $72,000 in which the present value of the maximum permissible gift to charity is $40,000, the life interests are valued in accordance

with the statute at $22,000 and thus the present value of the charitable remainder is $50,000, an excess of $10,000. Assuming that the trust assets remain constant in value, the amounts payable upon termination of the intervening interests would vary as follows:

|  | Miranda Rule | Buck Rule | Mayers Rule |
|---|---|---|---|
| To charities | $40,000 | $62,000 | $57,600 |
| To distributees | 32,000 | 10,000 | 14,400 |

Appellants contend that the court should have followed the formula employed in *Matter of Miranda* (*supra*), relying upon the statutory prohibition against allowance for interest, gains or losses in computing the charities' share. In support of the Surrogate, respondents urge that the charitable gift is to be valid " to the extent of one-half, and no more."

The issue turns upon the effect of the 1929 amendment, upon which all parties rely. Prior to that year the statute expressed a simple command, without express direction as to the matter of its satisfaction. In *Matter of Seymour* (239 N. Y. 259), decided in 1925, the question was whether a charity whose testamentary remainder had been limited in accordance with section 17 might share in the increase to the corpus which had accrued during the life interest. We held that the charity was not entitled to a share of this increase, under the theory that its residuary legacy had been transformed by operation of the statute into a general legacy in a fixed amount equivalent to the maximum permissible gift valued as of the testator's death. That theory had been expressed in only one previous case (*Matter of Brooklyn Trust Co.*, 179 App. Div. 262), where the question had been whether the charitable legatees should bear any of the expenses of administration. However, theory could not obviate the bald fact that " One hundred thousand dollars presently due is of more value than one hundred thousand dollars payable ten years hence " (239 N. Y., at p. 262). Thus we approved an allowance to the charity of interest for the actual period of the intervening estate, noting that it would have been equally proper to have computed the charity's permissible interest as the " present value of a legacy payable in the future ", so as to add interest for the actuarial duration of the left estate.

The amendment of 1929 clearly abrogated the rule of the *Seymour* case (*supra*) to some extent. That amendment was drafted by the Commission to Investigate Defects in the Laws of Estates, and a note of the commission was printed with the bill as enacted. It reads (Combined Reports of Decedent Estate Comm., Reprint, p. 185): " Also supersedes the ruling in Matter of Seymour, 239 N. Y. 259, that interest shall be added when payment is postponed, and declares the rule in that case that gains shall not be added. The amendment is in accord with the legislative intent that only one-half shall be paid over, *and no more*. The authorities hold that the computation of the one-half payable to the charitable or other corporations named must be computed as of the death of the decedent and upon the same basis as if it had then been turned into cash. By the amendment the Commission seeks to continue this rule as to the time of computation but intends to avoid any allowance to the charity by reason of a postponement occasioned by the terms of the will. The statute, it has been held, transforms a residuary gift to the corporation uncertain in amount into a general legacy for a fixed sum. Where a precedent trust has existed, and the income has been applied to the use of the beneficiary, a postponement of payment to the corporation would result under the decision cited, in a charge against the persons, who would be entitled to the other half, of the amount of interest on the postponed legacy to the corporation; interest was allowed under that decision at five per cent, compounded annually. A continuance of the trust for a substantial period of years might largely cut down the one-half share to such other persons, against whom would also be charged any losses incurred during the interim."

In determining the effect of the amendment, we should note also the first case in which it was considered (*Matter of Apple*, 141 Misc. 380). There the court was confronted with a legal life interest and a charitable remainder which exceeded the statutory limit by $1,449.20. That amount was paid outright to the life tenant, since it became merged with his life interest, and the residue was to pass to the charity upon his death. Clearly Surrogate FOLEY, who had been chairman of the commission, felt that the general legacy theory had been abrogated entirely, for the charity was to receive all of the residue less the fixed amount of the excess at date of the testator's death.

It is obvious that the amendment of 1929 has done away with the theoretical transformation of an excessive gift to charity into a general legacy in a fixed amount. It is also clear that under either of the two rules evolved since 1929 the charity will receive eventually a gift whose value at the date of the testator's death is either more (*Matter of Buck, supra*) or less (*Matter of Miranda, supra*) than one half the gross estate less debts. Apart from the anomalous consequences noted by the Surrogate which would result from the rule which appellants advocate, we cannot burke the fact that the charities would receive less than one half, when the statute commands that the charitable legacy shall be valid " to the extent of one-half, and no more." In fact, the Federal tax deduction would then be based upon the discounted present value of a gift in the fixed amount payable on termination of the life interest.

Only the most explicit statutory command should compel that result. We are agreed that the prohibition against any " allow ance * * * for * * * gains or losses " in computing the share of the charities does not forbid the result below, which validates the charitable remainder precisely " to the extent of one-half ".

Appellants' other contentions are without merit.

The order of the Appellate Division should be affirmed, with costs payable out of the estate. The questions certified are answered in the affirmative.

LOUGHRAN, Ch. J., LEWIS, CONWAY, DESMOND, DYE and FULD, JJ., concur.

Order affirmed, etc.