In the Matter of Cora G. Chamot, an Incompetent.

Supreme Court, Special Term, Tompkins County, May 3, 1951.

*Enos A. Pyle* for Joseph S. Barr, petitioner.

*Allan H. Treman* for Cornell University.

*Ernest A. Dahmen, Jr.,* special guardian.

*John J. Fitzgerald* for Albert B. Genung and others.

ZELLER, J. Emile M. Chamot, as student, instructor, graduate student, associate professor, professor, and professor emeritus was intimately and continuously associated with Cornell University from 1887 until his death in 1950, at the age of eighty-two years. In 1897, he married Cora Genung, a well-educated woman and talented singer. No children were born of the marriage. Shortly after his death, Mrs. Chamot who is now seventy-seven years of age was adjudged incompetent.

Mrs. Chamot's relatives consist of two nieces, Catherine Kindle, of Margate City, New Jersey, and Cora Winner, of Sao Paulo, Brazil, and two nephews, sons of a half brother, Albert Genung, of Freeville, New York, and Robert Genung, of Willseyville, New York. A cordial family relationship was maintained by Dr. and Mrs. Chamot with Albert Genung, Catherine Kindle, and Cora Winner although close association with the latter was made impossible upon her moving to Brazil. Little or no contact was had with Robert Genung.

Dr. Chamot's sisters, none of whom married, were bequeathed the estate which had been accumulated by their father. As each sister died her share was bequeathed to the surviving sisters.

Upon her death in 1947 the surviving sister bequeathed the greater portion of her estate — the bulk of the remainder of the Chamot family fortune — to Dr. Chamot. Its value was $120,000.

Shortly after his death Dr. Chamot's will, executed in 1947, was admitted to probate. It bequeathed $2,500 to Mrs. Chamot and the balance amounting to approximately $200,000 to a trustee who was directed to invest it and pay the income to Mrs. Chamot. It authorized the trustee to invade the corpus if the income be found insufficient '' to defray the expenses of any illness, accident, other emergency or to provide for the proper maintenance, support, comfort, and well-being '' of Mrs. Chamot. It provided that upon the death of Mrs. Chamot the remainder be given to Cornell University for use within the department of chemical microscopy.

The present value of Cornell University's remainder interest — computed without reference to the right of invasion — exceeds one half of the net estate less debts by approximately $50,000 and consequently exceeds the maximum permissible limits of a bequest to a charitable, scientific, or religious society or corporation. (Decedent Estate Law, § 17.) Cornell University is such an institution. (*Unger* v. *Loewy,* 236 N. Y. 73, 78.)

Prior to the revision of section 17 some courts held that the valuation of the gift to a charitable or other similar institution should be delayed until the death of the life beneficiary if the will permitted the invasion of the corpus. (*Rich* v. *Tiffany,* 2 App. Div. 25; *Matter of Dunlap,* 86 Misc. 372; *Matter of Waddell,* 129 Misc. 495.) The statute now requires computation of the maximum permissible gift upon values at the time of the testator's death, gives instructions for computing the value of a life estate but gives no instructions for computing the value of probable or possible invasions. Valuation and election cannot be postponed until the death of the life beneficiary because the right to elect terminates with such death. (*Matter of Plaster,* 179 Misc. 80, affd. 266 App. Div. 439, affd. 293 N. Y. 822.)

A method for determining the precise present value of the right to invasion need not be formulated herein. Suffice it to say that in view of the age of Mrs. Chamot, the present annual income from the trust fund ($8,350) and her present expenses ($6,400) it is a reasonable assumption that any invasion of the corpus will not bring Cornell University's remainder interest within the maximum permissible limits.

The problem presented in this proceeding is whether the committee should be instructed to contest the validity of the exces-

sive charitable bequest. Although the right to elect under section 17 is regarded as a personal one (*Matter of Plaster, supra*) this court has the power to direct a committee to exercise such right on behalf of an incompetent. (*Matter of Hills,* 264 N. Y. 349; *Matter of Brown,* 212 App. Div. 677, affd. 240 N. Y. 646.) Such choice should be made as, in all probability, would be made by Mrs. Chamot, if she were sane. (*Matter of Hills, supra; Matter of Brown, supra.*)

No convincing direct evidence has been presented from which Mrs. Chamot's wishes might be determined. The statements of Professor Papish and Mrs. Myer, friends of Dr. and Mrs. Chamot, that Mrs. Chamot would desire the will to stand unimpeached and the statement of Albert Genung that Mrs. Chamot would elect to reduce the share bequeathed to the university are opinions entitled to no probative weight. A will executed by Mrs. Chamot in 1942 which bequeathed her property to her husband and which made no provision for the disposition of her estate should she survive him cannot be deemed to express a desire not to benefit the educational institution particularly in view of the statement of Joseph F. Barr, in whose office her will and a similar one by Dr. Chamot were executed, that it was understood then by Dr. and Mrs. Chamot that the survivor would bequeath his or her estate to Cornell University.

In the absence of convincing direct proof of Mrs. Chamot's wishes her probable choice must be determined from facts of a circumstantial nature. During his entire adult life Dr. Chamot was a part of Cornell University. After his retirement and until shortly before his death Dr. Chamot continued research work on water purification and chemical microscopy in a laboratory which Cornell University had helped to install in the Chamot home. For over fifty years of married life Mrs. Chamot partook of her husband's close relationship with Cornell University and his work. Mrs. Chamot, an educated woman, moved most of her life in academic circles. No direct financial benefit would accrue to Mrs. Chamot if the bequest to Cornell University were partially invalidated as the entire net estate would remain in trust (*Matter of Franklin Trust Co.,* 190 App. Div. 575) and the resulting intestacy as to part of Dr. Chamot's estate would only be activated upon the death of Mrs. Chamot and would serve to increase her estate and benefit her relatives. Her relatives have not been dependent upon her for any financial aid nor is there any claim that they are now in need or will be in the future. Mrs. Chamot's own estate of approximately $27,000 will be inherited by her nieces and nephews.

The conclusion is reached that, in all probability, if sane, Mrs. Chamot would waive her right to interfere with the testamentary disposition made by her husband. The committee should be instructed to act accordingly.