Lott H. Wells, S.
On this executor’s accounting, Orick Reynolds, a son, Leslie Reynolds, Harold Reynolds, and Charles Reynolds, grandsons, have appeared and contend the testamentary provisions are in violation of section 17 of the Decedent Estate Law and are invalid to the extent that testatrix has devised and bequeathed more than one half of her estate, after the payment of debts, to a religious corporation.
Carrie M. Reynolds, the testatrix, died February 16, 1954 leaving a last will and testament dated March 19, 1951. Testa *655 trix left surviving a son, Robert J. Reynolds, a son, Orick Reynolds, and grandsons, Leslie Reynolds, Harold Reynolds, and Charles Reynolds, children of a deceased son, Harold Reynolds, who died February 13, 1954. On March 11, 1954 the will was admitted to probate without objection and letters testamentary were issued to John W. Whalen, the executor named therein.
The will, after directing the payment of her debts and funeral expenses, and a legacy of $1 to each of her sons, Harold Reynolds and Orick J. Reynolds, then provided: 11 Fourth: All the rest, residue and remainder of my property and estate, of every kind and nature, I give, devise and bequeath to my executor hereinafter named, in trust, however, for the care and maintenance of my son, Robert J. Reynolds. I give to my said executor and trustee, a full power and authority to manage said trust, and to expend such sums as he may deem wise and necessary for the proper care of my said son, Robert J. Reynolds, as long as he lives. Upon the death of my said son, Robert J. Reynolds, I direct that any part of said trust fund that might remain in the hands of my said trustee and executor, principal or income, or both, shall pass to St. John’s Episcopal Church of Massena, New York. Fifth: In the event that my said son, Robert J. Reynolds should die before I do, then and in that event, all of my estate, after the payment of debts and funeral expenses, I I give, devise and bequeath unto St. John’s Episcopal Church of Massena, N. Y. Lastly: I appoint my friend, John W. Whalen, of Massena, New York, executor — with full power and authority to sell and convey, lease or mortgage real estate.”
Section 17 of the Decedent Estate Law provides: (“No person having a husband, wife, child, or descendant or parent, shall, by his or her last will and testament, devise or bequeath to any benevolent, charitable, literary, scientific, religious or missionary society, association, corporation or purpose, in trust or otherwise, more than one-half part of his or her estate, after the oavment of his or her debts, and such devise or bequest shall be valid to the extent of one-half, and no more.) (The validity of a devise or bequest for more than such one-half may be contested only by a surviving husband, wife, child, descendant or parent. When payment of a devise or bequest to such society, association, corporation or purpose is postponed, in computing the one-half part of such society, association, corporation, or purpose, no allowance may be made for such postponement for any interest or gains or losses which may accrue after the testator’s death.) (The value of an annuity or life estate, legal or equitable, shall not be computed upon the actual *656 duration of the life, but shall be computed upon the actuarial value according to the American Experience Table of Mortality at the rate of four per centum per annum. Such value shall be deducted from the fund or property, which is subject to the annuity or life estate, in order to ascertain the value of a future estate or remainder interest passing to such society, association, corporation or purpose.) ”. The first parenthesis is the statute as it read prior to 1929. The second parenthesis is the addition to the statute added in 1929 (L. 1929, ch. 229) which became effective on September 1,1930 and the third parenthesis is the addition to the statute added in 1936 (L. 1936, ch. 288). Prior to 1929, the statute expressed a simple command, without express direction as to the matter of its satisfaction. (Matter of Mayers, 299 N. Y. 388, 396 [1949].)
“ The first sentence of the statute contains a prohibition and the second limits the class of persons who may avail themselves of a violation of the prohibition. * * * The prohibition contained in the statute is a limitation upon the right of a testator to dispose of Ms property in accordance with his own inclinations and desires. It should, therefore, be strictly construed against those seeking to invalidate testamentary provisions. The Legislature evidently intended that the privilege conferred by this section upon a favored class should be restricted. The language used may not be enlarged by judicial construction.” (Matter of Plaster, 266 App. Div. 439, 441 [1943].) The right to contest the validity of a bequest to certain corporations of more than one half of the estate of a testator is confined to the class'for whose protection the statutory limitation of testamentary power was imposed. (Matter of Hill, 264 N. Y. 349, 354 [1934].)
At the time of testatrix’ death, the only persons who could question the provisions of her will were her sons, Robert and Orick, and her grandsons, Leslie, Harold and Charles, her only distributees. No contention is made that Orick, a child, and Leslie, Harold, and Charles Reynolds, descendants, are not within the class of persons who may take advantage of the violation. (Matter of Plaster, 179 Misc. 80 [1942].)
The important question of construction is whether the value of the life estate created for the benefit of Robert J. Reynolds shall be determined according to the actual duration of his life, 12 days after probate of will, 35 days after death of testatrix, or by his expectancy of life according to the mortality tables, as provided by section 17 of the Decedent Estate Law, as of the death of the testatrix.
*657 1 ‘ It has long been the rule that computation of the maximum permissible gift and the determination of a violation are to be made upon values of the several interests as of the testator’s death (Hollis v. Drew Theol. Seminary, 95 N. Y. 166,180 [1884]; Matter of Durand, 194 N. Y. 477 [1909] —and that is now the express command of the statute.” (Matter of Mayers, 299 N. Y. 388, 395, supra.) In Hollis v. Brew Theol. Seminary (supra, p. 179) the use of mortality tables was authorized in the computation of the life estate, £ £ The value of the estate in a case like this must be determined at the death of the testator, and that must be ascertained by the help of the annuity tables and such other means as are in any case available ’ ’, but the actual duration of the life does not appear to have been involved.
The attorneys for the church in opposition to the contention of the son and grandsons, assert the value of the life estate or of the bequest to Robert J. Reynolds must be measured by the expectancy of the life tenant according to the mortality tables and submit the testatrix did not violate the provisions of section 17 of Decedent Estate Law and that total amount on hand is payable to the religious corporation as provided in the will.
Robert J. Reynolds, the cestui of the trust, died March 23, 1954. He was born September 26, 1912 and at the time of his mother’s death was 41 years of age possessing an expectancy on American Experience Mortality Table at 4% of 15.220 years. He had no estate of his own and remained at his mother’s home, 59 Maple Street, Massena, for one week after her death, during which "time his brother, Chick, stayed with him nights and looked after him. He then had an epileptic attack and was taken to St. Lawrence State Hospital, where he remained until his death. The major asset of the estate wras the residence real property of the deceased, and its value could not be determined until the house and contents were sold by the executor November 15, 1954 for $28,500. The only other assets being $165.95 insurance refund on house and contents, $50 from sale of 1940 auto, and $1 balance in checking account. The sale of the real property by the executor was necessary to pay expenses of administration, funeral expenses and debts. From February 16, 1954 the date Carrie Reynolds died, until November 15, 1954 the date of the down payment of $750 on sale of the real property, the estate produced no income and the only cash available was $51. The remaining payments on the sale were $10,000 on January 1,1955, $12,000 on July 26, 1955 and $5,750 on November 1, 1955.
The trust provided for under the fourth provision of the will was not formally erected. “ When is a trust created? The *658 answer depends upon the intentions of the testator as expressed in his will — not upon the action or non-action of the executor or trustee — not upon their caprice or diligence. It may be upon the testator ’s death. It is if there is nothing to indicate a contrary design. * * ® The trust certainly is created from the date when the cestui becomes entitled to its benefits.” (Matter of Bird, 241 N. Y. 184, 187 [1925].)
‘ ‘ Where a trust is created for the support of a beneficiary, and the beneficiary dies, questions arise as to the duties and powers of the trustee. It is a question of interpretation of the terms of the trust whether the trustee can properly pay the funeral expenses of the beneficiary ”. (2 Scott, Trusts [2d ed.], § 128.4, p. 943.) In the following cases it has been held that the settlor intended to include such expenses: Matter of Frayer (155 Misc. 811 [1935], affd. 246 App. Div. 703) (life tenant an employee); Matter of Van De Walker (79 Misc. 661 [1913]) (widow the life tenant); Matter of Montgomery (129 Misc. 14 [1927]) (life tenant was only daughter of testator and had no estate of her own). The account lists $1,037 paid out for Robert under the will: for funeral, $892, doctor, $10 and Department of Mental Hygiene, $135. This is not objected to.
Section 17 of the Decedent Estate Law provides that no person having a child or descendant shall by his will bequeath to a religious corporation, ‘ ‘ in trust or otherwise, more than one-half part of * *' * her estate, after the payment of * * * her debts, and such devise or bequest shall be valid to the extent of one-half, and no more.” The answer did not furnish all the necessary data nor set forth a computation to indicate the alleged violation of section 17. However, as shown by the account, the gross estate at the time of death aggregated $28,716.95. The debts amounted to $8,174.74, leaving an estate after payment of her debts of $20,542.21. Accordingly, she could bequeath to charity no more than $10,271.10. (Matter of Mayers, 189 Misc. 700 [1947], affd. 299 N. Y. 388 [1949], supra.)
The actual value of the residuary estate computed by deducting total of all attorneys’ fees, funeral expenses, administrative expenses, legacies, and executor’s commissions from net estate after payment of debts is $20,542.21 — $3,370.12 = $17,172.09. (Matter of Jones, 90 N. Y. S. 2d 598, 600.) Since the will directs that the residuary estate is to be held in trust for the life of Robert J. Reynolds and that the remainder is to go to a religious corporation at the termination of the trust, other text of section 17 is pertinent. It provides: “ The value of an annuity or life estate, legal or enuitahle, shall not be computed upon the actual duration of the life, but shall be computed upon the actuarial *659 value according to the American Experience Table of Mortality at the rate of four per centum per annum. Such value shall be deducted from the fund or property, which is subject to the annuity or life estate, in order to ascertain the value of a future estate or remainder interest passing to such society, association, corporation or purpose.” The value of the equitable life estate in the sum of $17,172.09 computed as directed by the statute (without reference to the right of invasion) is $10,454.37. The tenor of the statute clearly directs that there be deducted from $17,172.09 (the actual residuary estate), the sum of $10,454.37 (the value of the life interest), thus leaving the sum of $6,717.72 as “ the value of a future estate or remainder interest passing to such” religious corporation. If expectancy is the measure, the statute is not violated as the maximum amount or permissible gift ($10,271.10), that can be given the religious corporation, exceeds ($6,717.72), the present value of the remainder gift to the church, and the gift to the religious corporation would be valid notwithstanding the fact it would ultimately receive assets of $17,172.09 if the life estate was limited to income.
This presents the problem of the right of the executor to invade the corpus of the estate for the requirements of Eobert. The will directs that the residuary estate is to be held in trust “ to expend such sums as he may deem wise and necessary for the proper care of my said son, Eobert J. Eeynolds, as long as he lives ”, and that the remainder, “ any part of said trust fund that might remain * * * principal or income, or both, shall pass to St. John’s Episcopal Church of Massena, New York ”, at the termination of the trust. It is clear the trustee had the right to use all of the income and to such part of the corpus as he may deem wise and necessary for the proper care of Eobert, and such statement imported the exercise of honest judgment by the executor and could not be questioned. (Matter of Woollard, 295 N. Y. 390 [1946]); Matter of Bisconti, 306 N. Y. 442, 445 [1954].) The trustee had the right and it was his duty under this provision to use so much of the principal as may be reasonably necessary for the support of Eobert J. Eeynolds. (Matter of Waddell, 129 Misc. 495 [1927].)
Prior to the 1936 revision of section 17, some courts held that the valuation of the gift to a charitable or similar institution should be delayed until the death of the life beneficiary if the will permitted the invasion of the principal. (Rich v. Tiffany, 2 App. Div. 25, 28 [1891]: “What portion was necessary or proper for that purpose could only be ascertained by experience, and it follows, therefore, that a computation must necessarily be deferred until the death of the * * * because no pos *660 sible basis could be furnished therefor at any previous time ’ ’. (Matter of Waddell, supra.)
“ The statute now requires computation of the maximum permissible gift upon values at the time of testator’s death, gives instructions for computing the value of a life estate, but gives no instructions for computing the value of probable or possible invasions.” (Matter of Chamot, 201 Misc. 374, 376 [1951].)
Notes of Commission (Decedent Estate Law, § 17, p. 74) read: “ The fixation of the various interests is to be determined, as far as possible, at the date of death of testator, as if the assets were turned into money as of that date. Under certain wills, an absolute computation, as of the date of death of the testator, becomes impossible because of the terms of the testamentary gifts. Thus, where there are future contingent secondary life estates which may never come into existence, it is impossible to value such life estates immediately after the death of the testator. The existence of such life estates must await the actual event and can only be ascertained at the death of the first life tenant * * *. The amendment excludes the actual duration of the life as a method of valuation in every form of annuity or life estate, whether coming into existence at the date of the death of the testator, or at. any future time.” (See, also, Matter of Williams, 195 Misc. 461 [1949].) “ The 1936 amendment * * * was intended to clarify the purpose of the section, as theretofore construed by the courts. * * * Under that amendment the valuations of the estate and the interests of the respective beneficiaries, charitable and non-charitable, were to be computed as of the date of death of the testator, whenever the terms of the will made such computation possible. It is only when such computation as of the date of decedent’s death is impossible because of future conting’ent secondary life estates, that such computation must await the death of the life beneficiary.”
The bill jacket referable to the amendment contains the following letter addressed to Governor Lehman by Attorney-General Bennett on the purpose of the bill:
Memorandum for Governor Lehman:
In re: Assembly Int. No. 664, Pr. Nos. 684, 2035
This bill provides as a basis for measuring the value of a life estate, the actuarial or American Experience Mortality Table, rather than the actual duration of life, for the purpose of determining the value of a future estate or interest to a charitable association, etc. The purpose is to have a present basis for ascertaining the limitation of one-half of the estate which may be so bequeathed. The surrogates should he consulted hereon.
March 26, 1936. JOHN J. BENNETT, JR.
Attorney General.
*661 In this estate, it was possible for the remainder to be defeated by the invasion of the principal and the total consumption of the estate for the benefit of Robert J. Reynolds. In that event, the remainderman would take nothing. However, the failure of section 17 to provide instructions for computing value of probable or possible invasions would prevent the determination of the value of the life estate of Robert J. Reynolds prior to his death. (Matter of Chamot, supra.) At that time, 12 days after the appointment of the executor, no postponement in payment under the will was necessary, as his death terminated Ms interest, and an absolute computation of the actual value of such interest was possible under the terms of the testamentary gift. There is no necessity under such circumstances to apply actuarial computations, because a present basis for ascertaining the limitation of one half of the estate which may be so bequeathed is available by a determination as to the validity, construction or effect of the will. (Surrogate’s Ct. Act, § 145.) The true construction and effect of the fourth provision of the will relating to the care and maintenance of Robert J. Reynolds is construed as finding the valuation of the life estate or of the bequest to Robert J. Reynolds, must be based upon his actual survival for 35 days after the death of his mother and upon the actual income and principal payable to him under the will for this period. (Matter of Blumenthal, 208 N. Y. S. 682, 686 [1925].) “As a general proposition, one who executes a will believes that the testament covers all contingencies that might eventuate. At any rate, if the language employed by the testator is plain and his meaning clear, a court may not rewrite the will in order to avoid intestacy.” (Matter of Gautier, 3 N Y 2d 502, 510 [1957]; Matter of Englis, 2 N Y 2d 395 [1957]; also 3 Jessup-Redfield Surrogate’s Law and Practice [rev. ed.], 1949, § 1929, p. 100.) “If intention of a will-maker is to be found in the words used in the will and these are clear and definite there is no power to change them.” (Matter of Bisconti, 306 N. Y. 442, 445 [1954], supra.) In this case, before valuation of the estate and the interest of the life beneficiary, the death of the life beneficiary made computation unnecessary. The 1936 amendment to section 17 would rewrite the will in violation of its prohibition, without vesting.
The account, by chronological list of receipts and record of deaths, demonstrates a present basis for ascertaining the limitation of one half of the estate which may be bequeathed, by the fact it shows the bequest to Robert J. Reynolds, amounts to $1,037, the actual payments from principal for Ms doctor, hospital and funeral expenses. If this actual value of the bequest *662 to Robert J. Reynolds is to be used, rather than the actuarial value as provided by the 1936 amendment to section 17, the testatrix has bequeathed more than one half of her estate in violation of the statute. A stronger case on this point could hardly be found than the present one.
Section 17 of Decedent Estate Law was introduced into our jurisprudence by the Laws of 1860 (eh. 360, § 1). “It was passed for the benefit of the persons named in it, not for the benefit of the people at large as a measure of state policy.” “It does not compel a testator to leave his property or any part thereof to relatives. It does not prevent him from giving all that he has to charity during his lifetime. It is aimed simply at the giving of an undue proportion to charity by will, when certain near relations have, in the opinion of the legislature, a better claim.” “Its theory is not to keep property away from charitable corporations, but to prevent a testator giving them more than one-half of his net estate at the expense of his wife, child or parent. Its sole purpose is to protect those natural objects of his bounty from improvident gifts to their neglect.” “ It points toward no public interest, but toward the prevention of what the legislature regarded as a private wrong (Amherst College v. Ritch, 151 N. Y. 282, 334 [1897]; 2 Davids, New York Law of Wills, § 632, p. 1050.)
Section 17 is derived from chapter 360 of the Laws of 1860, an act relating to wills, passed April 13, 1860, “ Section 1: No person having a husband, wife, child or parent, shall, by his or her Last Will and Testament, devise or bequeath to any benevolent, charitable, literary, scientific, religious or missionary society, association or corporation, in trust or otherwise, more than one-half part of his or her estate, after the payment of his or her debts (and such devise or bequest shall be valid to the extent of one-half, and no more) ”. It was amended by chapter 301 of the Laws of 1923, to take effect September 1, 1923, by adding “ or purpose ” after “ corporation ”, and by chapter 502 of the Laws of 1927, to take effect September 1, 1927, by adding 1‘ or descendant ’ ’ after ‘ ‘ child ’ ’, and has been retained from 1860 with only the 1923 and 1927 change of phraseology until chapter 229 of the Laws of 1929.
This case illustrates the inconsistency of this law. The first sentence prohibits the giving to charity of more than one half of the estate after payment of debts, but it expressly and clearly provides that the bequest shall be valid to the extent of one half. The last two sentences (the 1936 amendment) are mandatory directions to disregard actual duration of life and for substitution of actuarial value. Actuarial value would not be *663 the true value of this bequest and would defeat the plain legislative mandate against giving more than one half of an estate to charity. ‘ ‘ In interpreting a statute, it is of course well settled that we must be guided by the rules that where the language is clear and unambiguous, the intent of the framers is to be first sought in the words and language employed and, if the words plainly and clearly express the sense of the framers, there is no reason to resort to other means of interpretation ” Matter of Smathers, 309 N. Y. 487, 494 [1956]). Turning, then to Notes of Commission (Decedent Estate Law, § 17, p. 74) it clearly appears the purpose of this 1936 amendment was ‘ ‘ to avoid the application of conflicting rules in the computations of the benefits which pass to charitable and other corporations, societies or purposes mentioned ’ \
The court concludes that in enacting the 1936 amendment to section 17 of the Decedent Estate Law, the Legislature was not' called upon and did not attempt to alter the prohibition of the statute or to prejudice the rights of a child and descendants, persons who may avail themselves of a violation of the prohibition. It follows, therefore, to uphold the sole purpose and spirit of the statute and at the same time sustain the intention of the testatrix for her son, Robert J. Reynolds, brings the court to the conclusion the 1936 amendment has no application in this case because: (1) the “present basis for ascertaining the limitation of one-half of the estate which may be so bequeathed”; (2) the failure of section 17 to give “instructions for computing the value of probable or possible invasions ”; (3) “In the case now before us the value of the life estate is known; the exact length of time which the beneficiary lived, and the value of that use are easily ascertainable, and to adopt an uncertain standard when the exact standard is at hand, would be contrary to a fundamental rule of law.” (Frost v. Emmanuel, 152 App. Div. 687, 689 [1912].) From these facts, the actual value of the legacy to Robert J. Reynolds, must be the basis for calculation of the value of the future estate.
The present basis for valuation of this life estate (plus provision for invasion of principal) distinguishes this case from Matter of Mayers (189 Misc. 700 [1947], supra) which held “ the actual residuary estate turned over by the executors to the trustees is to provide the basis for calculation of value of the future estate bequeathed to charity” for purpose of determining whether more than one half of estate has been given to charity contrary to this section.
The valuation of the life estate or of the bequest to Robert J. Reynolds being $1,037, such value is to be deducted from tin1 *664 total net estate. The difference, $16,135.09, represents the value of the remainder gift to the religions corporation. As this exceeds one half of-the net estate, it is apparent that the terms of the statute are violated and the gift to the religions corporation becomes one of $10,271.10. The testatrix died intestate as to the excess bequeathed to the religions corporation over one half of the net estate, and subject to the payment of expenses of administration, funeral expenses, legacies and commissions, it passes one half to Orick Reynolds, son, and one sixth each to Leslie, Harold, and Charles Reynolds, grandsons, as intestate property.
Because of the delay in seeking judicial settlement, we have also the question of distribution of $450 income earned after the sale of the real property and during the period of administration. This is not 11 interest or gains ’5 contemplated by the 1929 amendment, with prohibition against any allowance for gains or losses, in computing the share of the charities which, are postponed. This is a case where the amount which the corporation is to receive is fixed and is presently payable, but where for one reason or another it has not been paid within a reasonable time after the testatrix’ death, and where the executor so used the estate in his hands, including a part to which the corporation is entitled, so as to increase its value. It appears that under such circumstances the corporation might share in the increase caused in part by the use of its funds. (Matter of Seymour, 239 N. Y. 259, 263 [1925].) On October 7, 1957 the executor paid the corporation $8,500 to apply on its legacy, now determined at $10,271.10, making $1,771.10 the part of the estate to which the corporation is entitled, and used to increase its value. The income should be shared pro rata, based on $1,771.10 and intestate share (Personal Property Law, § 17-b). Proceed accordingly.